1  Michael Yesk (SB#130056)
   4 Fairway Pl.
2  Pleasant Hill, CA 94523
   510-909-9700
3  yesklaw@gmail.com
   Attorney for Plaintiffs

4

5                UNITED STATES DISTRICT COURT

6              NORTHERN DISTRICT OF CALIFORNIA

7  JOSE BARRIONUEVO and FLOR          )  Case No.:  12-CV-00572-EMC
   BARRIONUEVO,                       )
8                                     )  FIRST AMENDED COMPLAINT FOR
          Plaintiffs,                 )  WRONGFUL FORECLOSURE; SLANDER
9                                     )  OF TITLE; VIOLATION OF CALIFORNIA
          vs.                         )  CIVIL CODE SECTION 2923.5;
10                                    )  VIOLATIONS OF CALIFORNIA BUSINESS
   CHASE BANK, N.A. Successor In Interest to )  AND PROFESSIONS CODE SECTION
11 WASHINGTON MUTUAL BANK, FA; and   )  17200; AND INJUNCTIVE RELIEF
   DOES 1-100 Inclusive,              )
12                                    )  [28 U.S.C. § 1332(a)(1)]
          Defendants                  )
13                                    )  JURY TRIAL DEMANDED
                                      )
14                                    )
                                      )
15                                    )
                                      )
16 _____)

17                    **I. Introduction**

18     1.      This action arises of out the current economic crisis that has hit the nation and

19 continues to destroy homeowners' ability to maintain their properties.  The failure and

20 unraveling of the real estate market has caused a rush of foreclosures on properties all over the

21 country by banks and mortgage servicing companies, such as Defendants.  As the foreclosure

22 crisis continues, it has become clear that in their efforts to foreclose on as many properties as

23 quickly as possible lenders and servicers have been taking action outside the law.  The extent of

24 the crisis and the clear need for action has once more been highlighted by the recent national

25 mortgage settlement.

26

FIRST AMENDED COMPLAINT 12-CV-00572-EMC - 1

2.     This case is yet another example of those in the mortgage and foreclosure industry engaging in wrongful, illegal, and permanently damaging activities against homeowners.

## II. Parties

3.     Plaintiffs Jose Barrionuevo and Flor Barrionuevo (collectively "Plaintiffs") are allegedly the Trustors/Borrowers on that certain Deed of Trust recorded No. 2006084331 in the Official Records of the Recorder of Alameda County California, purportedly putting a lien on the real property located at 59311 Annadale Way, Dublin, California 94568 (the "Subject Property").

4.     Plaintiffs are informed and believe and on that basis allege that Defendant JPMorgan Chase Bank, N.A. ("JP Morgan"), as successor in interest to Washington Mutual Bank, F.A., is a National Banking Association organized under the laws of the United States with its main office in Columbus, Ohio.

## III. Venue and Jurisdiction

5.     Plaintiffs are now, and were at all times mentioned below, domiciled in and a resident of the State of California.

6.     Defendant JP Morgan, as successor in interest to Washington Mutual Bank, F.A., is a National Banking Association organized under the laws of the United States with its main office in Columbus, Ohio.

7.     This action is of a civil nature involving, exclusive of interest and costs, a sum in excess of $75,000.  Every issue of law and fact in this action is wholly between citizens of different states.  Plaintiff is informed and believes that therefore this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1).

8.     Venue is proper pursuant to 28 U.S.C. 1391(a)(2) because the unlawful conduct is alleged to have occurred in Alameda County, California and Plaintiff's home which is the subject of this litigation is located in Alameda County, California.

**IV. Facts**

9.      On March 3, 2006 Plaintiffs recorded a Deed of Trust in the Alameda County Recorder's Office against the Subject Property to secure a Note, in the amount of $1,720,000 in favor of Washington Mutual Bank, FA ("WaMu") as original "Lender."  The Deed of Trust names California Reconveyance Company ("Cal Reconveyance") as Trustee.  See Recorded Documents Attached.

10.      In May 2006, WaMu securitized and sold Plaintiffs' Deed of Trust to the WMALT Series 2006-AR4 TRUST ("Series 2006-AR4 Trust"), with La Salle Bank as Trustee. See Auditor's Report at 3.

11.      In 2008, WaMu entered into receivership with the Federal Deposit Insurance Company and JP Morgan acquired certain assets of WaMu's assets.

12.      On April 4, 2009, Cal Recoveance recorded a Notice of Default and Election to Sell Under Deed of Trust in the Alameda County Recorder's Office, thus initiating the foreclosure process of Plaintiffs' home

13.      On July 14, 2009, Cal Reconveyance recorded a Notice of Trustee's Sale in the Alameda County Recorder's Office.  Then, on October 19, 2010, Cal Reconveyance recorded a second Notice of Trustee's Sale in the Alameda County Recorder's Office.

14.      Finally, on February 2, 2012, Cal Recoveance recorded a third Notice of Trustee's Sale in the Alameda County Recorder's Office.

15.      Plaintiffs' filed the instant action and now submit their First Amended Complaint.

**A.  First Cause of Action for Wrongful Foreclosure by Plaintiffs Against Defendant**

16.      Plaintiffs re-allege and incorporate by reference all prior paragraphs in this complaint, as though fully set forth hereafter.

i. **Defendant JP Morgan is Not the Current Beneficiary Under Plaintiffs' Deed of Trust**

17.     The Notice of Trustee's Sale recorded on February 2, 2012 is invalid because a foreclosure sale of Plaintiffs' property on behalf of Defendant JP Morgan or Defendant La Salle Bank would be invalid and wrongful.

18.     Cal Reconveyance cannot conduct a valid foreclosure sale on behalf of Defendant JP Morgan because it is not the *true* present beneficiary under Plaintiffs' Deed of Trust. Although WaMu was the original beneficial interest holder under Plaintiffs' Deed of Trust, Defendant JP Morgan could not have acceded to the beneficial interest when it acquired some of WaMu's assets. In May of 2006, shortly after Plaintiffs entered into the Deed of Trust, WaMu securitized and sold the beneficial interest in the Deed of Trust to the Series 2006-AR4 Trust. From that point on, the Series 2006-AR4 Trust became the only *true* beneficiary under Plaintiffs' Deed of Trust. Thus, when JP Morgan acceded to certain of WaMu's assets in 2008, it could not have included the beneficial interest in Plaintiffs' Deed of Trust as WaMu had already sold the beneficial interest two years *prior*, in 2006. Since WaMu no longer owned the beneficial interest in Plaintiffs' Deed of Trust, it had nothing to convey to Defendant JP Morgan in 2008 and Defendant JP Morgan is *not* the *true* beneficiary. Any attempted foreclosure sale of Plaintiffs' home on behalf of Defendant JP Morgan would therefore be invalid and wrongful.

i. **Defendant JP Morgan Has Failed to Comply with California Civil Code Section 2932.5**

19.     The Notice of Trustee's Sale recorded on February 2, 2012 also cannot lead to a valid foreclosure of Plaintiffs' home by Cal Reconveyance on behalf of Defendant JP Morgan because Defendant has failed to comply with California Civil Code Section 2932.5.

20.     Section 2932.5 provides that where there is an instrument, such as a deed of trust, which is intended to secure the payment of money the power of sale "is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly

acknowledged and recorded." Thus, under Section 2932.5, the power of sale can only be exercised by an assignee who has recorded the assignment by which they acceded to the original lender's interest in the property. As the court stated in *In Re Salazar*, 448 B.R. 814, 819-20 (Bankr. S.D. Cal. 2011):

> US Bank, as the foreclosing beneficiary and assignee of Accredited's interest in the Loan, had to meet both requirements of Civil Code section 2932.5 for the foreclosure to be valid. Under that statute, first, U.S. Bank had to be entitled to payment of the secured debt. Civ.Code § 2932.5; see also Civ.Code § 2936 (Deering 2010); Comm.Code § 9203(a),(g) (Deering 2011); Carpenter v. Longan, 83 U.S. 271, 274, 16 Wall. 271, 21 L.Ed. 313 (1872) (the assignment of the note carries the mortgage with it); Polhemus v. Trainer, 30 Cal. 686, 688, 1866 WL 831 (1866) (the mortgage always abides with the debt). . . . . Second, Civil Code section 2932.5 also requires that U.S. Bank's status as foreclosing beneficiary appear before the sale in the public record title for the Property.

Therefore, in order to comply with Section 2932.5 any entity attempting to foreclose on Plaintiffs' property must have been entitled to payment under the Deed of Trust and must have been the recorded beneficiary in the public chain of title prior to the date of the foreclosure sale. In the instant case, however, Defendant JP Morgan has complied with Section 2932.5.

21.     Here, as discussed above, Defendant JP Morgan could not have directly acceded to the beneficial interest in Plaintiffs' Deed of Trust because WaMu sold it to the Series 2006-AR4 Trust in 2006. Thus, Defendant JP Morgan must comply with Section 2932.5 by recording a document in the public chain of title reflecting from whom it acquired the beneficial interest in Plaintiffs' Deed of Trust. Since no document exists in the public chain of title that conveys the beneficial interest in Plaintiffs' Deed of Trust to JP Morgan, Defendant JP Morgan has failed to comply with Section 2932.5 and lacks the power of sale. Any foreclosure sale of the Subject Property on its behalf would be in violation of California Civil Code Section 2932.5 and therefore wrongful.

22.     For the reasons stated above, there is a likelihood that Plaintiffs will prevail on the merits of their wrongful foreclosure claim. If Defendants are permitted to rely on the void and wrongful Notice of Trustee's Sale to complete this foreclosure process by conducting a Trustee's

1  sale and issuing a Trustee's Deed Upon Sale, Plaintiffs will wrongfully lose their home.  Such

2  injury is irreparable and cannot be adequately compensated by financial means.  Moreover, real

3  property is considered unique in California, and monetary damages are deemed inadequate to

4  compensate Plaintiffs for the loss thereof.  S*tockton v. Newman*, 148 Cal. App. 2d 558, 564

5  (1957).

6  **B. Second Action for Slander of Title by Plaintiffs Against Defendant**

7  23.    Plaintiffs re-allege and incorporate by reference all prior paragraphs in this

8  complaint, as though fully set forth hereafter.

9  24.    As discussed above, the Notice of Trustee's Sale recorded on February 2, 2012,

10  cannot lead to a valid foreclosure on behalf of Defendant JP Morgan because it neither could

11  have acceded to the beneficial interest in Plaintiffs' Deed of Trust from WaMu nor is there any

12  other validly recorded document making it the beneficiary.  Thus, the February 2, 2012 Notice of

13  Trustee was invalid and false.  Defendant JP Morgan acted with malice and a reckless disregard

14  for the truth by simply assuming it was the beneficiary under Plaintiffs' Deed of Trust and

15  causing a false Notice of Trustee's Sale to be recorded that cannot lead to a valid foreclosure.

16  25.    Defendant's JP Morgan causing the recordation of the February 2, 2012 Notice of

17  Trustee's Sale was therefore false, knowingly wrongful, without justification, in violation of

18  statute, unprivileged, and caused doubt to be placed on Plaintiffs' title to the property.  The false

19  recordation of the foregoing documents directly impairs the vendibility of Plaintiffs' property on

20  the open market in the amount of a sum to be proved at trial.

21  26.    The recording of the foregoing document made it necessary for Plaintiffs to retain

22  attorneys and to bring this action to cancel the instruments casting doubt on Plaintiffs' title.

23  Therefore, Plaintiffs are entitled to recover the attorneys' fees and costs incurred in cancelling

24  the instrument.  The exact amount of such damages is not known to Plaintiffs at this time, and

25  Plaintiffs will move to amend this complaint to state such amount when the same becomes

26  known, or on proof at the time of trial.

**C. Third Cause of Action for Violation of California Civil Code Section 2923.5 by Plaintiffs Against Defendant**

27.     Plaintiffs re-allege and reincorporate by reference the allegations in all paragraphs above as though fully set forth herein.

28.     Defendant JP Morgan violated California Civil Code Section 2923.5 by failing to contact Plaintiffs, in person or by telephone, at least 30 days prior to recording the Notice of Default on November 21, 2011.  The statement in the April 7, 2009 Notice of Default, stating that someone tried with due diligence to contact the borrower as required under Section 2923.5 is false because although signed under oath, Defendant failed to exercise due diligence in attempting to contact Plaintiffs as required by Section 2923.5; and in fact Plaintiffs were never contacted.

29.     Defendant JP Morgan's failure to comply with the Notice and Contact requirements of Section 2923.5 renders the Notice of Default and all subsequent proceedings based on said Notice, including the Notice of Trustee's Sale recorded February 2, 2012, invalid and void.  *See Mabry v. Superior Court*, 185 Cal. App. 4th 208, 236-37 (2010) (Notice of Default which fails to comply with Section 2923.5 is invalid and a non-judicial foreclosure may only proceed if a new, valid Notice of Default is recorded).

**D. Fourth Cause of Action for Violation of the Unfair Business Practices Act (California Business and Professions Code Section 17200) Against Defendant**

30.     Plaintiffs re-allege and incorporate by reference all prior paragraphs in this complaint, as though fully set forth herein.

31.     California Business and Professions Code Section 17200 prohibits unlawful, unfair, or fraudulent business practice.  Section 17200 is a derivative cause of action and Plaintiffs' ability to pursue this cause of action depends on the success or failure of their substantive causes of action.

32.     Defendant JP Morgan engaged in business practices which violate Section 17200 because it: 1) failed to contact the Plaintiffs at least 30 days prior to initiating foreclosure

proceedings via the Notice of Default in violation of Section 2923.5 and 2) filed a Notice of Default which failed to comply with Section 2923.5.

33.     Based on the violations of Civil Code Section 2923.5 Defendant violated Business and Professions Code Section 17200.  These violations caused Plaintiffs to suffer an injury in fact by placing their interest in the Subject Property in jeopardy by instituting foreclosure proceedings, and also by causing monetary damages in an amount to be proved at trial.

34.     Pursuant to California Code of Civil Procedure Section 1021.5, Plaintiffs are entitled to recover their reasonable attorney's fees, costs, and expenses incurred in bringing this action.

### Prayer for Relief

WHEREFORE, Plaintiffs JOSE BARRIONUEVO and FLOR BARRIONUEVO pray for a judgment against the Defendant as follows:

1. For a judgment declaring that the February 2, 2012 Notice of Trustee's Sale is false and void and any subsequent proceedings based on these documents would also be invalid;

2. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendant and its respective agents, servants, and employees, and all persons acting under, in concert with, or for them, from proceeding with a foreclosure sale of Plaintiffs' Property or otherwise attempting in any manner to dispossess Plaintiffs from possession of the Subject Property; or taking any action to enforce any other remedy purportedly provided to them by the Deed of Trust;

3. For damages according to proof at trial;

4. For punitive damages according to proof at trial;

5. For costs of suit and attorneys' fees herein incurred; and

6. For such other relief as the Court may deem just and proper.

### Demand for Jury Trial

Plaintiffs hereby demand a trial by jury of each and every claim so triable.

FIRST AMENDED COMPLAINT 12-CV-00572-EMC - 8

DATED: April 19, 2012

_____

Michael Yesk
Attorney for Plaintiffs
4 Fairway Pl.
Pleasant Hill, CA 94523
510-909-9700

Exhibit A



**Certified Forensic Loan Auditors**

# *CERTIFIED FORENSIC LOAN AUDITORS, LLC*

13101 West Washington Blvd., Suite 140, Los Angeles, CA 90066
Phone: 310-432-6304; Sales@CertifiedForensicLoanAuditors.com
www.CertifiedForensicLoanAuditors.com

# PROPERTY SECURITIZATION ANALYSIS REPORT

*"This is a Securitization Analysis Report and not a Forensic Audit Report"*

**Borrower:**

# JOSE BARRIONUEVO
# FLOR BARRIONUEVO

**Property:**

# 5931 ANNADALE WAY
# DUBLIN, CA 94568

Disclosure: You have engaged Certified Forensic Loan Auditors, LLC to examine your real estate documents. This information is not to be construed as legal advice or the practice of law, pursuant to *Business and Professions Code § 6125 et seq*, it is the intent of CFLA, its members, auditors and independent contractors, not to engage in activities that could be considered the practice of law by conduct exhibiting any of the following practices: "*...the doing and/or performing of services in a court of justice in any matter depending therein throughout the various stages and in conformity with the adopted rules of procedure. It includes legal advice and counsel and the preparation of legal instruments and contracts by which the legal rights are secured although such matter may or may not be depending in a court.*"



**Certified Forensic Loan Auditors**

# I.   TRANSACTION DETAILS

## BORROWER & CO-BORROWER:

| BORROWER | CO-BORROWER |
|---|---|
| JOSE BARRIONUEVO | FLOR BARRIONUEVO |
| **CURRENT ADDRESS** | **SUBJECT ADDRESS** |
| 5931 ANNADALE WAY DUBLIN, CA 94568 | 5931 ANNADALE WAY DUBLIN, CA 94568 |

## TRANSACTION PARTICIPANTS

| MORTGAGE BROKER | MORTGAGE SERVICER | MORTGAGE NOMINEE/BENEFICIARY |
|---|---|---|
| N/A | WASHINGTON MUTUAL BANK, FA | WASHINGTON MUTUAL BANK, FA |
| **ORIGINAL MORTGAGE LENDER** | **MORTGAGE TRUSTEE** | **TITLE COMPANY** |
| WASHINGTON MUTUAL BANK, FA 400 EAST MAIN STREET STOCKTON, CA 95290 | CALIFORNIA RECONVEYANCE COMPANY | ALLIANCE TITLE COMPANY |



**Certified Forensic Loan Auditors**

# II.   SECURITIZATION

## SECURITIZATION PARTICIPANTS

| ORIGINATOR/ LENDER | SPONSOR/SELLER | DEPOSITOR |
|---|---|---|
| **WASHINGTON MUTUAL BANK, FA 400 EAST MAIN STREET STOCKTON, CA 95290**<br><br>**Loan # 0706938776** | **WASHINGTON MUTUAL MORTGAGE SECURITIES CORP.** | **WAMU ASSET ACCEPTANCE CORP** |
| **ISSUING ENTITY** | **TRUSTEE** | **MASTER SERVICER/ SERVICER** |
| **WMALT SERIES 2006-AR4 TRUST** | **LASALLE BANK NATIONAL ASSOCIATION** | **WASHINGTON MUTUAL BANK** |
| **CUSTODIAN** | **CUT – OFF DATE** | **CLOSING DATE** |
| **LASALLE BANK NATIONAL ASSOCIATION** | **MAY 1, 2006** | **MAY 30, 2006** |



**Certified Forensic Loan Auditors**

Washington Mutual Mortgage Pass-Through
Certificates, WMALT Series 2006-AR4

WaMu Asset Acceptance Corp.
Depositor

Washington Mutual Bank
Countrywide Home Loans, Inc.
Servicers

Washington Mutual Mortgage Securities Corp.
Sponsor

$959,944,300
(Approximate)

## SUMMARY INFORMATION

The following summary highlights selected information from this prospectus supplement. It does not contain all of the information that you need to consider in making your investment decision. To understand the terms of the offered certificates, read carefully this entire prospectus supplement and the accompanying prospectus.

This summary provides an overview of certain calculations, cash flows and other information to aid your understanding. This summary is qualified by the full description of these calculations, cash flows and other information in this prospectus supplement and the accompanying prospectus.

## TRANSACTION PARTICIPANTS

On May 30, 2006, which is the closing date, the mortgage loans that support the certificates will be sold by Washington Mutual Mortgage Securities Corp., the sponsor of the securitization transaction, to WaMu Asset Acceptance Corp., the depositor. On the closing date, the depositor will sell the mortgage loans and related assets to the Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2006-AR4 Trust. In exchange for the mortgage loans and related assets, the Trust will issue the certificates pursuant to the order of the depositor.

The sponsor purchased the mortgage loans directly or indirectly from affiliated or unaffiliated third parties who either originated the mortgage loans or purchased the mortgage loans through correspondent or broker lending. Approximately 23.5%, 16.4% and 13.0% of the mortgage loans (by principal balance as of May 1, 2006) were originated by Countrywide Home Loans, Inc. ("Countrywide Home Loans"), GMAC Mortgage Corporation and First Magnus Financial Corporation, respectively.



**Certified Forensic Loan Auditors**

Approximately 76.5% of the mortgage loans (by principal balance as of May 1, 2006) will be serviced by Washington Mutual Bank. Approximately 23.5% of the mortgage loans (by principal balance as of May 1, 2006) will be serviced by Countrywide Home Loans or an affiliate thereof. With respect to the mortgage loans serviced by Countrywide Home Loans, Washington Mutual Bank, as servicer, on behalf of the Trust, will take actions required or permitted to be taken by the Trust as assignee of the sponsor's rights under the Countrywide servicing agreement (including making requests or demands or giving consents to Countrywide Home Loans, and receiving notices from Countrywide Home Loans).

Some servicing functions will be performed by Washington Mutual Mortgage Securities Corp., as administrative agent of Washington Mutual Bank. Some servicing functions will be outsourced to third party vendors.

Some mortgage loans, other than mortgage loans serviced by Countrywide Home Loans, will be serviced by the respective originators of those mortgage loans on an interim basis until the servicing is transferred to Washington Mutual Bank. By July 1, 2006, the servicing of those mortgage loans is expected to have been transferred to Washington Mutual Bank.

The trustee of the Trust will be LaSalle Bank National Association, and the Delaware trustee will be Christiana Bank & Trust Company.

Assignment of Trust Assets

    At the time of issuance of any series of securities, the depositor will cause the pool of mortgage assets or Mortgage Securities to be transferred to the related trust, together with all principal and interest received on or with respect to the mortgage assets or Mortgage Securities after the related cut-off date, other than principal and interest due on or before the cut-off date and other than any retained interest. The trustee will, concurrently with the assignment of mortgage assets or Mortgage Securities, deliver the securities to the depositor in exchange for the trust assets. Each mortgage asset will be identified in a schedule appearing as an exhibit to the related agreement. The schedule of mortgage assets will include detailed information as to the mortgage assets held by the trust, including the outstanding principal balance of each mortgage asset after application of payments due on the cut-off date, information regarding the interest rate on the mortgage asset, the interest rate net of the sum of the rates at which the servicing fee and the retained interest, if any, are calculated, the retained interest, if any, the current scheduled monthly payment of principal and interest, the maturity of the mortgage note, the value of the mortgaged property and other information with respect to the mortgage assets. Each Mortgage Security will be identified in the related agreement, which will specify as to each Mortgage Security information regarding the original principal amount and outstanding principal balance of each Mortgage Security as of the cut-off date, as well as the annual pass-through rate or interest rate for each Mortgage Security sold to the trust.

    If so specified in the related prospectus supplement, and in accordance with the rules of membership of Merscorp, Inc. and/or Mortgage Electronic Registration Systems, Inc., or MERS®, assignments of the mortgages for the mortgage loans held by the related trust will be registered



**Certified Forensic Loan Auditors**

electronically through Mortgage Electronic Registration Systems, Inc., or MERS® System. With respect to mortgage loans registered through the MERS® System, MERS® shall serve as mortgagee of record solely as a nominee in an administrative capacity on behalf of the trust and will not have any interest in any of those mortgage loans.

The depositor will, with respect to each mortgage asset, deliver or cause to be delivered to the trustee, or to the custodian, a mortgage note endorsed to the trustee, the trust, or in blank, the original recorded mortgage with evidence of recording or filing indicated on it, and an assignment (except as to any mortgage loan registered on the MERS® System) to the trustee, the trust, or in blank of the mortgage in a form for recording or filing as may be appropriate in the state where the mortgaged property is located; or, in the case of each cooperative loan, the related cooperative note endorsed to the trustee, the trust, or in blank, the original security agreement, the proprietary lease or occupancy agreement, the assignment of the proprietary lease to the originator of the cooperative loan, the recognition agreement, the related stock certificate and related blank stock powers, a copy of the original filed financing statement, and an assignment to the trustee or the trust of the security agreement, the assignment of proprietary lease and the financing statement; provided, however, that if so indicated in the applicable prospectus supplement, the depositor will not deliver to the trustee or to the custodian mortgage notes endorsed to the trustee, the trust or in blank, assignments of mortgage to the trustee, the trust, or in blank, or assignments to the trustee or the trust of the other documents relating to cooperative loans described above.

With respect to any mortgage loan secured by a mortgaged property located in Puerto Rico, the mortgages with respect to these mortgage loans either (a) secure a specific obligation for the benefit of a specified person or (b) secure an instrument transferable by endorsement. Endorsable Puerto Rico Mortgages do not require an assignment to transfer the related lien. Rather, transfer of endorsable mortgages follows an effective endorsement of the related mortgage note and, therefore, delivery of the assignment referred to in the paragraph above would be inapplicable. Direct Puerto Rico Mortgages that secure a specific obligation for the benefit of a specified person, however, require an assignment to be recorded with respect to any transfer of the related lien and the assignment for that purpose would be delivered to the trustee…

424B5:
http://www.sec.gov/Archives/edgar/data/1317069/000095011706002423/a42089.htm



**Certified Forensic Loan Auditors**

WaMu ASSET ACCEPTANCE CORP.,
as Depositor

WASHINGTON MUTUAL BANK,
as Servicer

LASALLE BANK NATIONAL ASSOCIATION,
as Trustee

CHRISTIANA BANK & TRUST COMPANY,
as Delaware Trustee

POOLING AND SERVICING AGREEMENT

$983,553,610.00

Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2006-AR4 Trust
WaMu Asset Acceptance Corp.

Washington Mutual Mortgage Pass-Through Certificates
WMALT Series 2006-AR4

Cut-Off Date: May 1, 2006

Section 2.04.  Conveyance of Mortgage Pool Assets
The Company does hereby irrevocably sell, transfer, assign, set over and otherwise convey to the Trust, without recourse, all the Company's right, title and interest in and to the Mortgage Pool Assets. In addition, the Company does hereby assign to the Trust, without recourse, the Company's rights (as assignee of the rights of Washington Mutual Mortgage Securities Corp.) under the Countrywide Agreement with respect to the servicing of the Countrywide Loans. The Trust, as payment of the purchase price of the Mortgage Pool Assets, shall, on the Closing Date, (i) issue the REMIC I Regular Interests and the Class R-1 Residual Interest to the Company and (ii) issue the Class PPP Certificates to the Company or the Company's designee in Authorized Denominations. The REMIC I Regular Interests, the Class PPP Certificates and the Class R-1 Residual Interest shall together be a separate series of beneficial interests in the assets of the Trust consisting of the Mortgage Pool Assets pursuant to Section 3806(b)(2) of the Statutory Trust Statute.

It is the express intent of the parties hereto that the conveyance of the Mortgage Pool Assets to the Trust by the Company as provided in this Section 2.04 be, and be construed as, an absolute sale of the Mortgage Pool Assets. It is, further, not the intention of the parties that such conveyance be deemed the grant of a security interest in the Mortgage Pool Assets by the Company to the Trust to secure a debt or other obligation of the Company. However, in the event that, notwithstanding the intent of the parties, the Mortgage Pool Assets are held to be the property of the Company, or if for

**Certified Forensic Loan Auditors**

any other reason this Agreement is held or deemed to create a security interest in the Mortgage Pool Assets, then

(a)   this Agreement shall constitute a security agreement;

(b)   the conveyance provided for in this Section 2.04 shall be deemed to be a grant by the Company to the Trust of, and the Company hereby grants to the Trust, to secure all of the Company's obligations hereunder, a security interest in all of the Company's right, title, and interest, whether now owned or hereafter acquired, in and to:

(I)   The Mortgage Pool Assets;

(II)   All accounts, chattel paper, deposit accounts, documents, general intangibles, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, and other minerals, consisting of, arising from, or relating to, any of the foregoing; and

(III)   All proceeds of the foregoing.

The Company shall file such financing statements, and the Company, the Servicer and the Trustee acting on behalf of the Trust at the direction of the Company shall, to the extent consistent with this Agreement, take such other actions as may be necessary to ensure that, if this Agreement were found to create a security interest in the Mortgage Pool Assets, such security interest would be a perfected security interest of first priority under applicable law and will be maintained as such throughout the term of the Agreement. In connection herewith, the Trust shall have all of the rights and remedies of a secured party under the Uniform Commercial Code as in force in the relevant jurisdiction…

PSA:
http://www.sec.gov/Archives/edgar/data/1361533/000127727706000501/exh41to8kpsawmalt2006_ar4a.htm



**Certified Forensic Loan Auditors**

**THE CORRECT PROCESS OF SECURITIZATION**



**HOW LENDERS "SIDE-STEPPED" THE PROCESS**





**Certified Forensic Loan Auditors**

# III. FORECLOSURE

### Chain of Title and Chain of Note
### Recorded Events on the Loan Including Foreclosure Issues and Securitization

| Recorded Chain of Deed Possession | | Chain of Note Possession | |
|---|---|---|---|
| **Date** | **Original Deed of Trust** | **Date** | **Note Holder** |
| MARCH 7, 2006 Instrument # 2006084331 Official Records, COUNTY OF ALAMEDA CALIFORNIA | JOSE BARRIONUEVO AND FLOR BARRIONUEVO (Borrower)<br><br>WASHINGTON MUTUAL BANK (Lender)<br>**Loan #  0706938776** | FEBRUARY 28, 2006 | WASHINGTON MUTUAL BANK (Lender)<br><br>Principal Amount: US $1,720,000.00<br>**Loan # 0706938776** |
| APRIL 7, 2009 Instrument # 2009101035 Official Records, COUNTY OF ALAMEDA CALIFORNIA | NOTICE OF DEFAULT CALIFORNIA RECONVETANCE COMPANY COLLEEN IRBY, ASSISTANT SECRETARY | MAY 1, 2006 | WMALT SERIES 2006-AR4 TRUST |
| OCTOBER 19, 2010 Instrument # 2010304598 Official Records, COUNTY OF ALAMEDA CALIFORNIA | NOTICE OF TRUSTEE'S SALE CALIFORNIA RECONVEYANCE COMPANY DEBORAH BRIGNAC, VICE PRESIDENT | | |

# IV. REPORT SUMMARY

**Deed of Trust:**

- On FEBRUARY 28, 2006, Debtors JOSE BARRIONUEVO AND FLOR BARRIONUEVO executed a negotiable promissory note and a security interest in the form of a Deed of Trust in the amount of US $1,720,000.00. This document was filed as document number 2006084331 in the Official Records, COUNTY OF ALAMEDA, CALIFORNIA.  This document identifies the *loan number as 0706938776.  The original lender of the promissory note is WASHINGTON MUTUAL BANK.   The original trustee under this Deed of Trust is CALIFORNIA RECONVEYANCE COMPANY.*

**Notice of Default:**

- On APRIL 7, 2009 Document number 2009101035 (Notice of Default and Election to Sell Under Deed of Trust) was filed in the Official Records COUNTY OF ALAMEDA, CALIFORNIA.  This Document properly identifies the amount of the mortgage loan that debtors obtained on FEBRUARY 28, 2006, recorded MARCH 7, 2006.



**Certified Forensic Loan Auditors**

**Notice of Trustee's Sale:**

- On july 14, 2009 a Notice of Trustee's Sale was filed as document number 2009223286 in the Official Records, COUNTY OF ALAMEDA, CALIFORNIA.
- On OCTOBER 19, 2010, another Notice of Trustee's Sale was filed as document number 2010304598 in the Official Records, COUNTY OF ALAMEDA, CALIFORNIA.

**Securitization:**

- The NOTE was sold, transferred and securitized into **WMALT SERIES 2006-AR4 TRUST.**

**ORIGINAL LENDER WITH SURRENDER STATUS:**





**Certified Forensic Loan Auditors**

# V:    CONCLUSION

## CHAIN OF TITLE



**ARROW LEGEND**
PURPLE – MORTGAGE DOCUMENTS
BLUE – SECURITIES CERTIFICATES
RED – INVESTOR FUNDS
GREEN – BORROWER FUNDS



**Certified Forensic Loan Auditors**

- For traditional lending prior to Securitization, the original Deed recording was usually the only recorded document in the Chain of Title.  That is because banks kept the loans, and did not sell the loan, hence, only the original recording being present in the banks name.

The advent of Securitization, especially through "Private Investors" and not Fannie Mae or Freddie Mac, involved an entirely new process in mortgage lending.  With Securitization, the Notes and Deeds were sold once, twice, three times or more.  Using the traditional model would involve recording new Assignments of the Deed and Note as each transfer of the Note or Deed of Trust occurred.  Obviously, this required time and money for each recording.

*(The selling or transferring of the Note is not to be confused with the selling of Servicing Rights, which is simply the right to collect payment on the Note, and keep a small portion of the payment for Servicing Fees.  Usually, when a homeowner states that their loan was sold, they are referring to Servicing Rights)*

*Securitizing a Loan*

Securitizing a loan is the process of selling a loan to Wall Street and private investors.  it is a method with many issues to be considered.  The methodology of securitizing a loan generally followed these steps:

- *A Wall Street firm would approach other entities about issuing a "Series of Bonds" for sale to investors and would come to an agreement.  In other words, the Wall Street firm "pre-sold" the bonds.*

- *The Wall Street firm would approach a lender and usually offer them a Warehouse Line of Credit.  The Warehouse Credit Line would be used to fund the loan.  The Warehouse Line would be covered by restrictions resulting from the initial Pooling & Servicing Agreement Guidelines and the Mortgage Loan Purchase Agreement. These documents outlined the procedures for the creation of the loans and the administering of the loans prior to, and after, the sale of the loans to Wall Street.*

- *The Lender, with the guidelines, essentially went out and found "buyers" for the loans, people who fit the general characteristics of the Purchase Agreement. (Guidelines were very general and most people could qualify."  The Lender would execute the loan and fund it, collecting payments until there were enough loans funded to sell to the Wall Street firm who could then issue the bonds.*

- *Once the necessary loans were funded, the lender would then sell the loans to the "Sponsor", usually either a subsidiary of the Wall Street firm, of a specially created Corporation of the lender.  At this point, the loans are separated into "tranches" of loans, where they will be eventually turned into bonds.*



**Certified Forensic Loan Auditors**

- *Next, the loans were "sold" to the "Depositor". This was a "Special Purpose Vehicle" designed with one purpose in mind. That was to create a "bankruptcy remote vehicle" where the lender or other entities are protected from what might happen to the loans, and/or the loans are "protected from the lender. The "Depositor" would have once again created by the Wall Street firm or the Lender.*

- *Then, the "Depositor" places the loans into the Issuing Entity, which is another created entity solely used for the purpose of selling the bonds.*

- *Finally, the bonds would be sold, with a Trustee appointed to ensure that the bondholders received their monthly payments.*

WASHINGTON MUTUAL BANK was a "correspondent lender" that originated mortgage loans which in turn, was sold and transferred into a "federally-approved securitization" trust named WMALT SERIES 2006-AR4 TRUST.

- The Note and Deed have taken two distinctly different paths. The Note was securitized into WMALT SERIES 2006-AR4 TRUST.

- The written agreement that created the WMALT SERIES 2006-AR4 TRUST is a "Pooling and Servicing Agreement" (PSA), and is a matter of public record, available on the website of the Securities Exchange Commission. The Trust is also described in a "Prospectus Supplement," also available on the SEC website. The Trust by its terms set a "CLOSING DATE" of MAY 30, 2006. The promissory note in this case became trust property in compliance with the requirement set forth in the PSA. The Trust agreement is filed under oath with the Securities and Exchange Commission. The acquisition of the assets of the subject Trust and the PSA are governed under the law.

*In view of the foregoing, all Assignment of Deed of Trust executed after the Trust's Closing Date would be a void act for the reason that it violated the express terms of the Trust instrument.*

- The loan was originally made to WASHINGTON MUTUAL BANK and was sold and transferred to WMALT SERIES 2006-AR4 TRUST. There is no record of Assignments to either the Sponsor or Depositor as required by the Pooling and Servicing Agreement.

In *Carpenter v. Longan* 16 Wall. 271,83 U.S. 271, 274, 21 L.Ed. 313 (1872), **the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity."**

An obligation can exist with or without security. With no security, the obligation is unsecured but still valid. A security interest, however, cannot exist without an underlying existing obligation. It is impossible to define security apart from its relationship to the promise or obligation it secures. (Civil Code §§ 2872, 2909, 2920; California Mortgages and Deeds of Trust, and Foreclosure Litigation, by Roger Bernhardt, Fourth Edition, § 1.11)



**Certified Forensic Loan Auditors**

The obligation and the security are commonly drafted as separate documents – typically a promissory note and a deed of trust. If the creditor transfers the note but not the deed of trust, the transferee receives a secured note; the security follows the note, legally if not physically. If the transferee is given the deed of trust without the note accompanying it, the transferee has no meaningful rights except the possibility of legal action to compel the transferor to transfer the note as well, if such was the agreement. (Kelley v. Upshaw 91952) 39 C.2d 179, 246 P.2d 23; Polhemus v. Trainer (1866) 30C 685)

"Where the mortgagee has "transferred" only the mortgage, the transaction is a nullity and his "assignee" having received no interest in the underlying debt or obligation, has a worthless piece of paper (4 Richard R. Powell), Powell on Real Property, § 37.27 [2] (2000)

By statute, assignment of the mortgage carries with it the assignment of the debt. . . Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable. *The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose*, unless the holder of the deed of trust is the agent of the holder of the note. Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. *The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust.*"

**ANY ATTEMPT TO TRANSFER THE BENEFICIAL INTEREST OF A TRUST DEED WITHOUT OWNERSHIP OF THE UNDERLYING NOTE IS VOID UNDER CALIFORNIA LAW**



**Certified Forensic Loan Auditors**

This report was based exclusively on the documentation provided. It also required that we make reasonable assumptions respecting disclosures and certain loan terms that, if erroneous, may result in material differences between our findings and the loan's actual compliance with applicable regulatory requirements. While we believe that our assumptions provide a reasonable basis for the review results, we make no representations or warranties respecting the appropriateness of our assumptions, the completeness of the information considered, or the accuracy of the findings.

The contents of this report are being provided with the understanding that we are not providing legal advice, nor do we have any relationship, contractual or otherwise, with anyone other than the recipient. We do not, in providing this report, accept or assume responsibility for any other purpose.

Sincerely,

*Arthur Bernardo*

**Certified Mortgage Securitization Auditor**

**CERTIFIED FORENSIC LOAN AUDITORS**
13101 West Washington Blvd., Suite 140
Los Angeles CA 90066
310-432-6304

Exhibit B

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800 892-6902
(818)775-2258 (Fax)



2009101035      04/07/2009 10:59 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:                 15 00

                                2   PGS

*Space above this line for recorder's use only*

---

<u>Trustee Sale No. 233127CA</u>   Loan No. 0706938776   Title Order No. 602124709

# IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**<u>IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION</u>, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).**

This amount is $46,016.52 as of April 06, 2009 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

<u>Trustee Sale No. 233127CA</u>  Loan No. 0706938776  Title Order No. 602124709

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: JPMorgan Chase Bank, National Association, at 7301 BAYMEADOWS WAY , JACKSONVILLE, FL 32256, (877) 926-8937.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.  NOTICE IS HEREBY GIVEN THAT: CALIFORNIA RECONVEYANCE COMPANY is the duly appointed Trustee under a Deed of Trust dated 02/28/2006, executed by JOSE BARRIONUEVO AND FLOR BARRIONUEVO, TRUSTEES OF THE JOSE BARRIONUEVO AND FLOR BARRIONUEVO LIVING TRUST DATED 12/23/2004., as trustor, to secure obligations in favor of WASHINGTON MUTUAL BANK, FA, as Beneficiary Recorded 03/07/2006, Book , Page , Instrument 2006084331 of official records in the Office of the Recorder of ALAMEDA County, California, as more fully described on said Deed of Trust. APN: 985-0034-064-00 Situs: 5931 ANNADALE WAY, DUBLIN, CA 94568 Including the note(s) for the sum of $1,720,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE 12/01/2008 MONTHLY INSTALLMENT OF INTEREST, LATE CHARGES AND OTHER CHARGES AS DESCRIBED IN THE BILLING STATEMENT FOR SAID MONTHLY BILLING; AND ALL SUBSEQUENT MONTHLY INSTALLMENTS OF INTEREST, LATE CHARGES AND OTHER CHARGES AS DESCRIBED IN THE BILLING STATEMENT FOR EACH MONTHLY BILLING CYCLE.**

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of §2935.5.

DATE:  April 06, 2009

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

_____
Colleen Irby, Assistant Secretary

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

Exhibit C

Recording Requested By
**ServiceLink**
RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA  91311
800-892-6902



2012040100    02/02/2012 10:17 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:    21.00



2   PGS

| Trustee Sale No. | **233127CA** |
| Loan No. | 0706938776 |
| Title Order No. | 602124709 |

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 02-28-2006.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 02-23-2012 at 12:30 PM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 03-07-2006, Book , Page , Instrument 2006084331,      of official records in the Office of the Recorder of ALAMEDA County, California, executed by:  JOSE BARRIONUEVO AND FLOR BARRIONUEVO, TRUSTEES OF THE JOSE BARRIONUEVO AND FLOR BARRIONUEVO LIVING TRUST DATED 12/23/2004., as Trustor, WASHINGTON MUTUAL BANK,  FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state.  Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust.   The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Place of Sale: THE FALLON STREET ENTRANCE TO THE COUNTY COURTHOUSE, 1225 FALLON STREET , OAKLAND, CA

Legal Description:  LOT 85 OF TRACT 7136, FILED MAY 3, 2002, MAP BOOK 263, PAGES 87-93, ALAMEDA COUNTY
RECORDS.

Amount of unpaid balance and other charges: $2,243,973.95 (estimated)

Street address and other common designation of the real property:    5931 ANNANDALE WAY
DUBLIN, CA 94568
APN Number:  985-0034-064-00
The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone; by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 02-02-2012

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

CASEY KEALOHA, ASSISTANT SECRETARY

California Reconveyance Company
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA  91311
800-892-6902

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT

For Sales Information:
(714) 730-2727 or www.lpsasap.com
(714) 573-1965 or www.priorityposting.com