**BRYAN CAVE LLP**
Daniel T. Rockey, California Bar No. 178264
Bahareh Mostajelean, California Bar No. 258903
John C. Hedger, California Bar No. 230814
560 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone:     (415) 675-3400
Facsimile:     (415) 675-3434
Email:     daniel.rockey@bryancave.com
          bahareh.mostajelean@bryancave.com
          hedgerj@bryancave.com

Attorneys for Defendants
JPMORGAN CHASE BANK, N.A (erroneously sued as Chase Bank, N.A., successor in interest to Washington Mutual Bank, F.A.) and CALIFORNIA RECONVENYANCE COMPANY

# IN THE UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSE BARRIONUEVO AND FLOR BARRIONEUVO individuals,<br><br>        Plaintiffs,<br><br>vs.<br><br>CHASE BANK, N.A. Successor In Interest to WASHINGTON MUTUAL BANK, FA; and DOES 1 - 100, Inclusive,<br><br>        Defendants | Case No. 3:12-CV-572 EMC<br><br>Hon. Edward M. Chen<br><br>**DECLARATION OF JOHN C HEDGER IN SUPPORT OF DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[FRCP 56]**<br><br>Date:     July 11, 2013<br>Time:    1:30 pm<br>Location: San Francisco Courthouse<br>         Courtroom 5 - 17th Floor<br>         450 Golden Gate Avenue<br>         San Francisco, CA 94102<br><br>Complaint Filed:  2/08/12<br>First Amended Complaint Filed:  4/19/12<br>Trial Date: 8/26/13 |

# DECLARATION OF JOHN C. HEDGER

I, John C. Hedger, declare:

1.    I am an attorney licensed to practice law in the Northern District of California's Federal Courts and an attorney with the law firm of Bryan Cave LLP, counsel of record for defendants JPMORGAN CHASE BANK, N.A and CALIFORNIA RECONVEYENCE COMPANY. I make this Declaration in support of Defendants' Motion for Summary Judgment.  The information contained in this Declaration is true and correct to the best of my knowledge, and if called upon to testify in court regarding the matters addressed herein, I could and would competently do so.

2.    On February 8, 2013, Defendant served Plaintiffs with Requests for Admission ("RFA").  True and correct copies of the RFAs are attached hereto as **Exhibit A**.

3.    On or around March 13, 2013, Plaintiffs served verified responses to Defendant's first set of RFAs.  Attached hereto as **Exhibit B** are true and correct copies of Plaintiffs' verified responses to Defendant's RFAs.

4.    On February 8, 2013, Defendant served Plaintiffs with Interrogatories.  True and correct copies of the Interrogatories are attached hereto as **Exhibit C**.

5.    On or around March 13, 2013, Plaintiffs served verified responses to Defendant's Interrogatories.  Attached hereto as **Exhibit D** are true and correct copies of Plaintiffs' verified responses to Defendant's Interrogatories.

6.    On or around May 8, 2013, Plaintiffs' counsel e-mailed me a Property Securitization Analysis Report and Affidavit of Facts prepared by Plaintiffs' expert, Michael Carrigan.  A true and correct copy of the email, report and affidavit are attached hereto as **Exhibit E**.

7.    On May 21, 2013, I deposed Plaintiffs' expert, Michael Carrigan.  Attached hereto as **Exhibit F** is a true and correct copy of relevant excerpts of his deposition transcript.

///

///

///

///

8. Plaintiffs did not serve any written discovery on my clients and did not notice any depositions.

I declare under penalty of perjury that the facts set forth above are true and correct.

Executed this 6th day of June 2013, in San Francisco, California.

*/s/ John C. Hedger*
John C. Hedger

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105

**EXHIBIT A**

1  Daniel T. Rockey, California Bar No. 178604
   Bahareh Mostajelean, California Bar No. 258903
2  John C. Hedger, California Bar No. 230814
   **BRYAN CAVE LLP**
3  333 Market Street, 25th Floor
   San Francisco, CA 94105
4  Telephone:    (415) 675-3400
   Facsimile:    (415) 675-3434
5  Email:    daniel.rockey@bryancave.com
             bahareh.mostajelean@bryancave.com
6             hedgerj@bryancave.com

7
   Attorneys for Defendant JPMORGAN CHASE BANK, N.A (as acquirer of
8  certain assets from WASHINGTON MUTUAL BANK, FA)

9
                   **UNITED STATES DISTRICT COURT**
10
                **FOR NORTHERN DISTRICT OF CALIFORNIA**
11

12                        **SAN FRANCISCO DIVISION**

13  JOSE BARRIONUEVO AND FLOR          Case No. CV12-0572 NC
    BARRIONUEVO individuals,
14                                     **REQUESTS FOR ADMISSION**
                Plaintiffs,            **PROPOUNDED BY DEFENDANT JP**
15                                     **MORGAN CHASE BANK, N.A. TO**
    vs.                                **PLAINTIFF JOSE BARRIONUEVO**
16
    CHASE BANK, N.A. Successor In Interest to
17  WASHINGTON MUTUAL BANK, FA; and
    DOES 1 - 100, Inclusive,           Complaint Filed:            12/06/2011
18                                     First Amended Complaint Filed:  4/19/2012
                Defendants
19                                     Trial Date:                 8/26/2013

20

21  PROPOUNDING PARTY:    JPMORGAN CHASE BANK N.A.

22  RESPONDING PARTY:    JOSE BARRIONUEVO

23  SET NO.:    One (1)

24

25      Defendant JPMORGAN CHASE BANK, N.A. requests, pursuant to Federal Rules of Civil

26  Procedure 36, that Plaintiff JOSE BARRIONUEVO respond under oath to the following Requests

27  for Admission within thirty (30) days as required by FRCP 36(a)(3).

28

# REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that the Deed of Trust for the real property located at 59311 Annadale Way, Dublin, California was not securitized.

**REQUEST FOR ADMISSION NO. 2:**

Admit you have not made a tender of all monies owed pursuant to the Deed of Trust for the real property located at 59311 Annadale Way, Dublin, California.

**REQUEST FOR ADMISSION NO. 3:**

Admit you are unable to tender all monies owed pursuant to the Deed of Trust for the real property located at 59311 Annadale Way, Dublin, California.

**REQUEST FOR ADMISSION NO. 4:**

Admit that you signed the Deed of Trust for the real property located at 59311 Annadale Way, Dublin, California attached hereto as Exhibit A.

**REQUEST FOR ADMISSION NO. 5:**

Admit that you signed the Adjustable Rate Rider for the real property located at 59311 Annadale Way, Dublin, California attached hereto as Exhibit B.

**REQUEST FOR ADMISSION NO. 6:**

Admit that you signed the Planned Unit Development Rider for the real property located at 59311 Annadale Way, Dublin, California attached hereto as Exhibit C.

**REQUEST FOR ADMISSION NO. 7:**

Admit that the loan of $1,720,000 you obtained pursuant to the Deed of Trust for the real property located at 59311 Annadale Way, Dublin, California was not original purchase money.

**REQUEST FOR ADMISSION NO. 8:**

Admit that you applied for a loan modification from JPMorgan Chase Bank, N.A. prior to October 21, 2011.

**REQUEST FOR ADMISSION NO. 9:**

Admit JP Morgan Chase Bank N.A. complied with California Civil Code Section 2923.5 prior to recording the Notice of Default on November 21, 2011.

BRYAN CAVE LLP
333 MARKET STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105

REQUESTS FOR ADMISSION PROPOUNDED BY DEFENDANT TO PLAINTIFF JOSE BARRIONUEVO

1     **REQUEST FOR ADMISSION NO. 10:**

2     Admit that, as of today, you were evaluated by JPMorgan Chase Bank, N.A. for a loan

3 modification.

4     **REQUEST FOR ADMISSION NO. 11:**

5     Admit that California Reconveyance Company is the trustee named on the Deed of Trust

6 for the real property located at 59311 Annadale Way, Dublin, California.

7     **REQUEST FOR ADMISSION NO. 12:**

8     Admit that California Reconveyance Company is the current trustee for the real property

9 located at 59311 Annadale Way, Dublin, California.

10

11 Dated: February 8, 2013                 **BRYAN CAVE LLP**

12

13                              By: _____

14                                  John C. Hedger

                                 Attorneys for Defendant

15                                  JPMORGAN CHASE BANK, N.A (as acquirer of

                                 certain assets from WASHINGTON MUTUAL

16                                  BANK, FA)

17

18

19

20

21

22

23

24

25

26

27

28

Bryan Cave LLP
333 Market Street, 25ᵗʰ Floor
San Francisco, CA 94105

REQUESTS FOR ADMISSION PROPOUNDED BY DEFENDANT TO PLAINTIFF JOSE BARRIONUEVO

**EXHIBIT B**

1
Michael Yesk (SB#130056)
70 Doray Dr., Suite 16
2
Pleasant Hill, CA 94523
Telephone: 925-849-5525
3
yesklaw@gmail.com
Attorney for Plaintiffs
4

5                    UNITED STATES DISTRICT COURT

6                   NORTHERN DISTRICT OF CALIFORNIA

7

8    JOSE BARRIONUEVO and FLOR          )
     BARRIONUEVO,                       )  Case Number: 12-cv-00572-EMC
9                                       )
                                        )
10                                      )  PLAINTIFFS' RESPONSE TO
            Plaintiffs,                 )  DEFENDANT'S REQUEST FOR
11                                      )  ADMISSIONS TO JOSE AND FLOR
                                        )  BARRIONUEVO
12          vs.                         )
                                        )
13                                      )  Complaint Filed: 12/6/2011
     CHASE BANK, N.A. Successor In Interest to )  First Amended Complaint Filed: 4/19/2012
14   WASHINGTON MUTUAL BANK, FA; and    )
     DOES 1-100 Inclusive,              )  Trial Date: August 26, 2013
15                                      )
                                        )
16          Defendants                  )
                                        )
17   ─────────────────────────────────

18

19      1.  Request for Admission: Deny

20      2.  Admit

21      3.  Deny

22      4.  Admit

23      5.  Admit

24      6.  Admit

25      7.  Admit

26      8.  Admit

27

28   Plaintiffs' Responses to Request for Admissions

                                        Page **1** of **2**

9. Deny

10. Deny

11. Admit

12. Deny


Dated: March 13, 2013                    /s/ Michael Yesk

                                          Counsel for plaintiff

Plaintiffs' Responses to Request for Admissions

**EXHIBIT C**

1  Daniel T. Rockey, California Bar No. 178604
   Bahareh Mostajelean, California Bar No. 258903
2  John C. Hedger, California Bar No. 230814
   **BRYAN CAVE LLP**
3  333 Market Street, 25th Floor
   San Francisco, CA 94105
4  Telephone:    (415) 675-3400
   Facsimile:    (415) 675-3434
5  Email:    daniel.rockey@bryancave.com
            bahareh.mostajelean@bryancave.com
6            hedgerj@bryancave.com

7

8  Attorneys for Defendant JPMORGAN CHASE BANK, N.A (as acquirer of
   certain assets from WASHINGTON MUTUAL BANK, FA)

9                    **UNITED STATES DISTRICT COURT**

10              **FOR NORTHERN DISTRICT OF CALIFORNIA**

11

12                      **SAN FRANCISCO DIVISION**

13  JOSE BARRIONUEVO AND FLOR            Case No. CV12-0572 NC
    BARRIONEUVO individuals,
14                                       **DEFENDANT JP MORGAN CHASE**
              Plaintiffs,                **BANK, N.A.'S INTERROGATORIES TO**
15                                       **PLAINTIFF JOSE BARRIONUEVO**
    vs.
16
    CHASE BANK, N.A. Successor In Interest to
17  WASHINGTON MUTUAL BANK, FA; and      Complaint Filed:              12/06/2011
    DOES 1 - 100, Inclusive,             First Amended Complaint Filed:  4/19/2012
18
              Defendants                 Trial Date:                   8/26/2013
19

20

21  PROPOUNDING PARTY:    JPMORGAN CHASE BANK N.A.

22  RESPONDING PARTY:    JOSE BARRIONUEVO

23  SET NO.:             One (1)

24

25    Defendant JPMORGAN CHASE BANK, N.A. requests, pursuant to Federal Rules of Civil

26  Procedure 33, that Plaintiff JOSE BARRIONUEVO respond under oath to the following

27  interrogatories within thirty (30) days as required by FRCP 33(b)(2).

28

BRYAN CAVE LLP
333 MARKET STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105

# INTERROGATORIES

## INTERROGATORY NO. 1:

State all facts supporting your claim that Washington Mutual Bank, F.A. securitized and sold your Deed of Trust for the real property located at 59311 Annadale Way, Dublin, California to the WMALT Series 2006-AR4 Trust.

## INTERROGATORY NO. 2:

Identify all people that you believe have knowledge supporting your claim that Washington Mutual Bank, F.A. securitized and sold your Deed of Trust for the real property located at 59311 Annadale Way, Dublin, California to the WMALT Series 2006-AR4 Trust..

## INTERROGATORY NO. 3:

Identify all documents supporting your claim that Washington Mutual Bank, F.A. securitized and sold your Deed of Trust for the real property located at 59311 Annadale Way, Dublin, California to the WMALT Series 2006-AR4 Trust.

## INTERROGATORY NO. 4:

State all facts supporting your claim that JPMorgan Chase Bank, N.A. is not the current beneficiary under the Deed of Trust for the real property located at 59311 Annadale Way, Dublin, California.

## INTERROGATORY NO. 5:

Identify all people that you believe have knowledge supporting your claim that JPMorgan Chase Bank, N.A. is not the current beneficiary under the Deed of Trust for the real property located at 59311 Annadale Way, Dublin, California.

## INTERROGATORY NO. 6:

Identify all documents supporting your claim that JPMorgan Chase Bank, N.A. is not the current beneficiary under the Deed of Trust for the real property located at 59311 Annadale Way, Dublin, California.

## INTERROGATORY NO. 7:

State all facts supporting your claim that JPMorgan Chase Bank, N.A. or its designated agent did not comply with California Civil Code § 2923.5 before a Notice of Default regarding the

BRYAN CAVE LLP
333 MARKET STREET, 25ᵀᴴ FLOOR
SAN FRANCISCO, CA 94105

BRYAN CAVE LLP
333 MARKET STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105

1  real property located at 59311 Annadale Way, Dublin, California was recorded on April 7, 2009.

2  **INTERROGATORY NO. 8:**

3      Identify all people that you believe have knowledge supporting your claim that JPMorgan

4  Chase Bank, N.A. or its designated agent did not comply with California Civil Code § 2923.5

5  before a Notice of Default regarding the real property located at 59311 Annadale Way, Dublin,

6  California was recorded on April 7, 2009.

7  **INTERROGATORY NO. 9:**

8      Identify all documents supporting your claim that JPMorgan Chase Bank, N.A. or its

9  designated agent did not comply with California Civil Code § 2923.5 before a Notice of Default

10  regarding the real property located at 59311 Annadale Way, Dublin, California was recorded on

11  April 7, 2009.

12

13  Dated: February 8, 2013                    **BRYAN CAVE LLP**

14

15                                          By: _____

16                                              John C. Hedger
                                               Attorneys for Defendant
17                                             JPMORGAN CHASE BANK, N.A (as acquirer of
                                               certain assets from WASHINGTON MUTUAL
18                                             BANK, FA)

SF01DOCS\124959.1\C076651\0334282SF01DOCS\124959.1\C076651\0334282Error! Unknown document property name.                    2

DEFENDANT'S INTERROGATORIES TO PLAINTIFF JOSE BARRIONUEVO

**EXHIBIT D**

Michael Yesk (SB#130056)
70 Doray Dr., Suite 16
Pleasant Hill, CA 94523
Telephone: 925-849-5525
yesklaw@gmail.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE BARRIONUEVO and FLOR
BARRIONUEVO,

        Plaintiffs,

        vs.

CHASE BANK, N.A. Successor In Interest to
WASHINGTON MUTUAL BANK, FA; and
DOES 1-100 Inclusive,

        Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case Number: 12-cv-00572-EMC

PLAINTIFFS' RESPONSE TO
DEFENDANT'S INTERROGATORIES TO
JOSE BARRIONUEVO

Complaint Filed: 12/6/2011
First Amended Complaint Filed: 4/19/2012

Trial Date: August 26, 2013

Interrogatory No. 1.:

The loan was originally made to WASHINGTON MUTUAL BANK and was sold and

transferred to WMALT SERIES 2006-AR4 TRUST. There is no record of Assignments to either

the Sponsor or Depositor as required by the Pooling and Servicing Agreement.

On May 30, 2006, which is the closing date, the mortgage loans that support the certificates will

be sold by Washington Mutual Mortgage Securities Corp., the sponsor of the securitization

transaction, to WaMu Asset Acceptance Corp., the depositor. On the closing date, the depositor

will sell the mortgage loans and related assets to the Washington Mutual Mortgage Pass-Through

Certificates WMALT Series 2006-AR4 Trust. In exchange for the mortgage loans and related assets, the Trust will issue the certificates pursuant to the order of the depositor.

The sponsor purchased the mortgage loans directly or indirectly from affiliated or unaffiliated third parties who either originated the mortgage loans or purchased the mortgage loans through correspondent or broker lending. Approximately 23.5%, 16.4% and 13.0% of the mortgage loans (by principal balance as of May 1, 2006) were originated by Countrywide Home Loans, Inc. ("Countrywide Home Loans"), GMAC Mortgage Corporation and First Magnus Financial Corporation, respectively.

Approximately 76.5% of the mortgage loans (by principal balance as of May 1, 2006) will be serviced by Washington Mutual Bank. Approximately 23.5% of the mortgage loans (by principal balance as of May 1, 2006) will be serviced by Countrywide Home Loans or an affiliate thereof. With respect to the mortgage loans serviced by Countrywide Home Loans, Washington Mutual Bank, as servicer, on behalf of the Trust, will take actions required or permitted to be taken by the Trust as assignee of the sponsor's rights under the Countrywide servicing agreement (including making requests or demands or giving consents to Countrywide Home Loans, and receiving notices from Countrywide Home Loans).

Some servicing functions will be performed by Washington Mutual Mortgage Securities Corp., as administrative agent of Washington Mutual Bank. Some servicing functions will be outsourced to third party vendors.

Some mortgage loans, other than mortgage loans serviced by Countrywide Home Loans, will be serviced by the respective originators of those mortgage loans on an interim basis until the servicing is transferred to Washington Mutual Bank. By July 1, 2006, the servicing of those mortgage loans is expected to have been transferred to Washington Mutual Bank.

The trustee of the Trust will be LaSalle Bank National Association, and the Delaware trustee will be Christiana Bank & Trust Company.

Assignment of Trust Assets

At the time of issuance of any series of securities, the depositor will cause the pool of mortgage assets or Mortgage Securities to be transferred to the related trust, together with all principal and interest received on or with respect to the mortgage assets or Mortgage Securities after the related cut-off date, other than principal and interest due on or before the cut-off date and other than any retained interest. The trustee will, concurrently with the assignment of mortgage assets or Mortgage Securities, deliver the securities to the depositor in exchange for the trust assets. Each mortgage asset will be identified in a schedule appearing as an exhibit to the related agreement. The schedule of mortgage assets will include detailed information as to the mortgage assets held by the trust, including the outstanding principal balance of each mortgage asset after application of payments due on the cut-off date, information regarding the interest rate on the mortgage asset, the interest rate net of the sum of the rates at which the servicing fee and the retained interest, if any, are calculated, the retained interest, if any, the current scheduled monthly payment of principal and interest, the maturity of the mortgage note, the value of the mortgaged property and other information with respect to the mortgage assets. Each Mortgage Security will be identified in the related agreement, which will specify as to each Mortgage Security information regarding the original principal amount and outstanding principal balance of each Mortgage Security as of the cut-off date, as well as the annual pass-through rate or interest rate for each Mortgage Security sold to the trust.

If so specified in the related prospectus supplement, and in accordance with the rules of membership of Merscorp, Inc. and/or Mortgage Electronic Registration Systems, Inc., or

MERS®, assignments of the mortgages for the mortgage loans held by the related trust will be registered electronically through Mortgage Electronic Registration Systems, Inc., or MERS® System. With respect to mortgage loans registered through the MERS® System, MERS® shall serve as mortgagee of record solely as a nominee in an administrative capacity on behalf of the trust and will not have any interest in any of those mortgage loans.

The depositor will, with respect to each mortgage asset, deliver or cause to be delivered to the trustee, or to the custodian, a mortgage note endorsed to the trustee, the trust, or in blank, the original recorded mortgage with evidence of recording or filing indicated on it, and an assignment (except as to any mortgage loan registered on the MERS® System) to the trustee, the trust, or in blank of the mortgage in a form for recording or filing as may be appropriate in the state where the mortgaged property is located; or, in the case of each cooperative loan, the related cooperative note endorsed to the trustee, the trust, or in blank, the original security agreement, the proprietary lease or occupancy agreement, the assignment of the proprietary lease to the originator of the cooperative loan, the recognition agreement, the related stock certificate and related blank stock powers, a copy of the original filed financing statement, and an assignment to the trustee or the trust of the security agreement, the assignment of proprietary lease and the financing statement; provided, however, that if so indicated in the applicable prospectus supplement, the depositor will not deliver to the trustee or to the custodian mortgage notes endorsed to the trustee, the trust or in blank, assignments of mortgage to the trustee, the trust, or in blank, or assignments to the trustee or the trust of the other documents relating to cooperative loans described above.

With respect to any mortgage loan secured by a mortgaged property located in Puerto Rico, the mortgages with respect to these mortgage loans either (a) secure a specific obligation for the

benefit of a specified person or (b) secure an instrument transferable by endorsement. Endorsable Puerto Rico Mortgages do not require an assignment to transfer the related lien. Rather, transfer of endorsable mortgages follows an effective endorsement of the related mortgage note and, therefore, delivery of the assignment referred to in the paragraph above would be inapplicable. Direct Puerto Rico Mortgages that secure a specific obligation for the benefit of a specified person, however, require an assignment to be recorded with respect to any transfer of the related lien and the assignment for that purpose would be delivered to the trustee…

Interrogatory No. 2.: Witnesses:

COLLEEN IRBY, ASSISTANT SECRETARY

DEBORAH BRIGNAC, VICE PRESIDENT

The following persons are Plaintiffs may use as expert witnesses to support their claims.

Plaintiffs and their expert witness may be contacted only through their counsel of record.

| *Michael Carrigan and Arthur Bernardo, expert witnesses, May only be contacted by formal discovery requests as an expert witness* **CERTIFIED FORENSIC LOAN AUDITORS** 13101 West Washington Blvd., Suite 140 Los Angeles CA 90066     a. *310-432-6304* | All matters set forth in the Property Securitization Analysis Report attached hereto as Exhibit A. |
| --- | --- |

Interrogatory No. 2. Documents:
MARCH 7, 2006
    Instrument #
      2006084331
Official Records, COUNTY OF ALAMEDA
      CALIFORNIA
JOSE BARRIONUEVO AND FLOR
      BARRIONUEVO (Borrower)

WASHINGTON MUTUAL BANK (Lender)
Loan # 0706938776
FEBRUARY 28, 2006
WASHINGTON MUTUAL
BANK (Lender)
Principal Amount:
US $1,720,000.00
Loan # 0706938776

| APRIL 7, 2009 Instrument # 2009101035 Official Records, COUNTY OF | NOTICE OF DEFAULT CALIFORNIA RECONVETANC E COMPANY COLLEEN IRBY | MAY 1, 2006 | WMALT SERIES 2006-AR4 TRUS T |
|---|---|---|---|
| OCTOBER 19, 2010 Instrument # 2010304598 Official Records, COUNTY OF | NOTICE OF TRUSTEE'S SALE CALIFORNIA RECONVEYANCE | | |

Pooling and Servicing Agreement:

http://www.sec.gov/Archives/edgar/data/1361533/000127727706000501/exh41to8kpsawmalt2006_ar4a.htm

Certified Forensic Loan Auditors, LLC, Property Securitization Analysis Report.

Interrogatory No. 4.:

The loan was originally made to WASHINGTON MUTUAL BANK and was sold and transferred to WMALT SERIES 2006-AR4 TRUST. There is no record of Assignments to either the Sponsor or Depositor as required by the Pooling and Servicing Agreement.

On May 30, 2006, which is the closing date, the mortgage loans that support the certificates will be sold by Washington Mutual Mortgage Securities Corp., the sponsor of the securitization transaction, to WaMu Asset Acceptance Corp., the depositor. On the closing date, the depositor will sell the mortgage loans and related assets to the Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2006-AR4 Trust. In exchange for the

mortgage loans and related assets, the Trust will issue the certificates pursuant to the order of the depositor.

The sponsor purchased the mortgage loans directly or indirectly from affiliated or unaffiliated third parties who either originated the mortgage loans or purchased the mortgage loans through correspondent or broker lending. Approximately 23.5%, 16.4% and 13.0% of the mortgage loans (by principal balance as of May 1, 2006) were originated by Countrywide Home Loans, Inc. ("Countrywide Home Loans"), GMAC Mortgage Corporation and First Magnus Financial Corporation, respectively.

Approximately 76.5% of the mortgage loans (by principal balance as of May 1, 2006) will be serviced by Washington Mutual Bank. Approximately 23.5% of the mortgage loans (by principal balance as of May 1, 2006) will be serviced by Countrywide Home Loans or an affiliate thereof. With respect to the mortgage loans serviced by Countrywide Home Loans, Washington Mutual Bank, as servicer, on behalf of the Trust, will take actions required or permitted to be taken by the Trust as assignee of the sponsor's rights under the Countrywide servicing agreement (including making requests or demands or giving consents to Countrywide Home Loans, and receiving notices from Countrywide Home Loans).

Some servicing functions will be performed by Washington Mutual Mortgage Securities Corp., as administrative agent of Washington Mutual Bank. Some servicing functions will be outsourced to third party vendors.

Some mortgage loans, other than mortgage loans serviced by Countrywide Home Loans, will be serviced by the respective originators of those mortgage loans on an interim basis until the servicing is transferred to Washington Mutual Bank. By July 1, 2006, the servicing of those mortgage loans is expected to have been transferred to Washington Mutual Bank.

The trustee of the Trust will be LaSalle Bank National Association, and the Delaware trustee will be Christiana Bank & Trust Company.

Assignment of Trust Assets

At the time of issuance of any series of securities, the depositor will cause the pool of mortgage assets or Mortgage Securities to be transferred to the related trust, together with all principal and interest received on or with respect to the mortgage assets or Mortgage Securities after the related cut-off date, other than principal and interest due on or before the cut-off date and other than any retained interest. The trustee will, concurrently with the assignment of mortgage assets or Mortgage Securities, deliver the securities to the depositor in exchange for the trust assets. Each mortgage asset will be identified in a schedule appearing as an exhibit to the related agreement. The schedule of mortgage assets will include detailed information as to the mortgage assets held by the trust, including the outstanding principal balance of each mortgage asset after application of payments due on the cut-off date, information regarding the interest rate on the mortgage asset, the interest rate net of the sum of the rates at which the servicing fee and the retained interest, if any, are calculated, the retained interest, if any, the current scheduled monthly payment of principal and interest, the maturity of the mortgage note, the value of the mortgaged property and other information with respect to the mortgage assets. Each Mortgage Security will be identified in the related agreement, which will specify as to each Mortgage Security information regarding the original principal amount and outstanding principal balance of each Mortgage Security as of the cut-off date, as well as the annual pass-through rate or interest rate for each Mortgage Security sold to the trust.

If so specified in the related prospectus supplement, and in accordance with the rules of membership of Merscorp, Inc. and/or Mortgage Electronic Registration Systems, Inc., or

MERS®, assignments of the mortgages for the mortgage loans held by the related trust will be registered

electronically through Mortgage Electronic Registration Systems, Inc., or MERS® System. With respect to mortgage loans registered through the MERS® System, MERS® shall serve as mortgagee of record solely as a nominee in an administrative capacity on behalf of the trust and will not have any interest in any of those mortgage loans.

The depositor will, with respect to each mortgage asset, deliver or cause to be delivered to the trustee, or to the custodian, a mortgage note endorsed to the trustee, the trust, or in blank, the original recorded mortgage with evidence of recording or filing indicated on it, and an assignment (except as to any mortgage loan registered on the MERS® System) to the trustee, the trust, or in blank of the mortgage in a form for recording or filing as may be appropriate in the state where the mortgaged property is located; or, in the case of each cooperative loan, the related cooperative note endorsed to the trustee, the trust, or in blank, the original security agreement, the proprietary lease or occupancy agreement, the assignment of the proprietary lease to the originator of the cooperative loan, the recognition agreement, the related stock certificate and related blank stock powers, a copy of the original filed financing statement, and an assignment to the trustee or the trust of the security agreement, the assignment of proprietary lease and the financing statement; provided, however, that if so indicated in the applicable prospectus supplement, the depositor will not deliver to the trustee or to the custodian mortgage notes endorsed to the trustee, the trust or in blank, assignments of mortgage to the trustee, the trust, or in blank, or assignments to the trustee or the trust of the other documents relating to cooperative loans described above.

With respect to any mortgage loan secured by a mortgaged property located in Puerto Rico, the mortgages with respect to these mortgage loans either (a) secure a specific obligation for the benefit of a specified person or (b) secure an instrument transferable by endorsement. Endorsable Puerto Rico Mortgages do not require an assignment to transfer the related lien. Rather, transfer of endorsable mortgages follows an effective endorsement of the related mortgage note and, therefore, delivery of the assignment referred to in the paragraph above would be inapplicable. Direct Puerto Rico Mortgages that secure a specific obligation for the benefit of a specified person, however, require an assignment to be recorded with respect to any transfer of the related lien and the assignment for that purpose would be delivered to the trustee…

Interrogatory No. 5.: Witnesses:

COLLEEN IRBY, ASSISTANT SECRETARY

DEBORAH BRIGNAC, VICE PRESIDENT

The following persons are Plaintiffs may use as expert witnesses to support their claims. Plaintiffs and their expert witness may be contacted only through their counsel of record.

| | |
|---|---|
| *Michael Carrigan and Arthur Bernardo, expert witnesses, May only be contacted by formal discovery requests as an expert witness* **CERTIFIED FORENSIC LOAN AUDITORS** 13101 West Washington Blvd., Suite 140 Los Angeles CA 90066     a. *310-432-6304* | All matters set forth in the Property Securitization Analysis Report attached hereto as Exhibit A. |

Interrogatory No. 6. Documents:
MARCH 7, 2006
    Instrument #
        2006084331
Official Records, COUNTY OF ALAMEDA
    CALIFORNIA
JOSE BARRIONUEVO AND FLOR
    BARRIONUEVO (Borrower)

        WASHINGTON MUTUAL BANK (Lender)
    Loan #  0706938776
FEBRUARY 28, 2006
WASHINGTON MUTUAL
    BANK (Lender)
    Principal Amount:
    US $1,720,000.00
    Loan # 0706938776

| APRIL 7, 2009 Instrument # 200910103 | NOTICE OF DEFAULT CALIFORNIA RECONVETANCE COMPANY COLLEEN IRBY | MA Y 1, 2006 | WMALT SERIES 2006-AR4 TRUS T |
|---|---|---|---|
| OCTOBER 19, 2010 Instrument # 201030459 | NOTICE OF TRUSTEE'S SALE CALIFORNIA RECONVEYANCE | | |

Pooling and Servicing Agreement:

http://www.sec.gov/Archives/edgar/data/1361533/000127727706000501/exh41to8kpsawma

lt2006_ar4a.htm

Certified Forensic Loan Auditors, LLC,  Property Securitization Analysis Report

Interrogatory No. 7: Facts:

Because Defendant Chase and Washington Mutual Mortgage Pass-Through Certificates

WMALT Series 2006-AR4 Trust violated the Pooling and Servicing Agreement, Chase is

not and never has been the servicer for the Trust, never communicated with anyone from the

Trust, and the Trust lacked the legal capacity to accept the loan, even though Washington

Mutual was paid in full for the loan. Therefore, there were no monies due and owing to Washington Mutual for Chase to acquire.

Interrogatory No. 8.: Witnesses:

JOSE BARRIONUEVO

COLLEEN IRBY, ASSISTANT SECRETARY

DEBORAH BRIGNAC, VICE PRESIDENT

The following persons are Plaintiffs may use as expert witnesses to support their claims. Plaintiffs and their expert witness may be contacted only through their counsel of record.

| | |
|---|---|
| *Michael Carrigan and Arthur Bernardo, expert witnesses, May only be contacted by formal discovery requests as an expert witness* **CERTIFIED FORENSIC LOAN AUDITORS** 13101 West Washington Blvd., Suite 140 Los Angeles CA 90066     a. *310-432-6304* | All matters set forth in the Property Securitization Analysis Report attached hereto as Exhibit A. |

Interrogatory No. 9. Documents:
MARCH 7, 2006
    Instrument #
    2006084331
Official Records, COUNTY OF ALAMEDA
    CALIFORNIA
JOSE BARRIONUEVO AND FLOR
    BARRIONUEVO (Borrower)

      WASHINGTON MUTUAL BANK (Lender)
    Loan # 0706938776
FEBRUARY 28, 2006
WASHINGTON MUTUAL
    BANK (Lender)
    Principal Amount:
    US $1,720,000.00
    Loan # 0706938776

| APRIL 7, 2009 Instrument # 200910103 | NOTICE OF DEFAULT CALIFORNIA RECONVETANCE COMPANY COLLEEN | MAY 1, 2006 | WMALT SERIES 2006-AR4 TRUST |
|---|---|---|---|
| OCTOBER 19, 2010 Instrument # 201030459 | NOTICE OF TRUSTEE'S SALE CALIFORNIA | | |

Pooling and Servicing Agreement:

http://www.sec.gov/Archives/edgar/data/1361533/000127727706000501/exh41to8kpsawmalt2006_ar4a.htm

Certified Forensic Loan Auditors, LLC, Property Securitization Analysis Report.


Dated: March 13, 2013          /s/ Michael Yesk

                              Counsel for plaintiff

VERIFICATION

I, Jose Barrionuevo, am the Plaintiff in the above-entitled action. I have read the foregoing Interrogatories and know the contents thereof of my own personal knowledge. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Pleasant Hill, California.

DATED: March 1, 2013

_Jose L. Barrionuevo_
Jose Barrionuevo

Michael Yesk (SB#130056)
70 Doray Dr., Suite 16
Pleasant Hill, CA 94523
Telephone: 925-849-5525
yesklaw@gmail.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE BARRIONUEVO and FLOR
BARRIONUEVO,

      Plaintiffs,

  vs.

CHASE BANK, N.A. Successor In Interest to
WASHINGTON MUTUAL BANK, FA; and
DOES 1-100 Inclusive,

      Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case Number: 12-cv-00572-EMC

PLAINTIFFS' RESPONSE TO
DEFENDANT'S INTERROGATORIES TO
FLOR BARRIONUEVO

Complaint Filed: 12/6/2011
First Amended Complaint Filed: 4/19/2012

Trial Date: August 26, 2013

Interrogatory No. 1.:

The loan was originally made to WASHINGTON MUTUAL BANK and was sold and

transferred to WMALT SERIES 2006-AR4 TRUST. There is no record of Assignments to either

the Sponsor or Depositor as required by the Pooling and Servicing Agreement.

On May 30, 2006, which is the closing date, the mortgage loans that support the certificates will

be sold by Washington Mutual Mortgage Securities Corp., the sponsor of the securitization

transaction, to WaMu Asset Acceptance Corp., the depositor. On the closing date, the depositor

will sell the mortgage loans and related assets to the Washington Mutual Mortgage Pass-Through

Certificates WMALT Series 2006-AR4 Trust. In exchange for the mortgage loans and related assets, the Trust will issue the certificates pursuant to the order of the depositor.

The sponsor purchased the mortgage loans directly or indirectly from affiliated or unaffiliated third parties who either originated the mortgage loans or purchased the mortgage loans through correspondent or broker lending. Approximately 23.5%, 16.4% and 13.0% of the mortgage loans (by principal balance as of May 1, 2006) were originated by Countrywide Home Loans, Inc. ("Countrywide Home Loans"), GMAC Mortgage Corporation and First Magnus Financial Corporation, respectively.

Approximately 76.5% of the mortgage loans (by principal balance as of May 1, 2006) will be serviced by Washington Mutual Bank. Approximately 23.5% of the mortgage loans (by principal balance as of May 1, 2006) will be serviced by Countrywide Home Loans or an affiliate thereof. With respect to the mortgage loans serviced by Countrywide Home Loans, Washington Mutual Bank, as servicer, on behalf of the Trust, will take actions required or permitted to be taken by the Trust as assignee of the sponsor's rights under the Countrywide servicing agreement (including making requests or demands or giving consents to Countrywide Home Loans, and receiving notices from Countrywide Home Loans).

Some servicing functions will be performed by Washington Mutual Mortgage Securities Corp., as administrative agent of Washington Mutual Bank. Some servicing functions will be outsourced to third party vendors.

Some mortgage loans, other than mortgage loans serviced by Countrywide Home Loans, will be serviced by the respective originators of those mortgage loans on an interim basis until the servicing is transferred to Washington Mutual Bank. By July 1, 2006, the servicing of those mortgage loans is expected to have been transferred to Washington Mutual Bank.

The trustee of the Trust will be LaSalle Bank National Association, and the Delaware trustee will be Christiana Bank & Trust Company.

Assignment of Trust Assets

At the time of issuance of any series of securities, the depositor will cause the pool of mortgage assets or Mortgage Securities to be transferred to the related trust, together with all principal and interest received on or with respect to the mortgage assets or Mortgage Securities after the related cut-off date, other than principal and interest due on or before the cut-off date and other than any retained interest. The trustee will, concurrently with the assignment of mortgage assets or Mortgage Securities, deliver the securities to the depositor in exchange for the trust assets. Each mortgage asset will be identified in a schedule appearing as an exhibit to the related agreement. The schedule of mortgage assets will include detailed information as to the mortgage assets held by the trust, including the outstanding principal balance of each mortgage asset after application of payments due on the cut-off date, information regarding the interest rate on the mortgage asset, the interest rate net of the sum of the rates at which the servicing fee and the retained interest, if any, are calculated, the retained interest, if any, the current scheduled monthly payment of principal and interest, the maturity of the mortgage note, the value of the mortgaged property and other information with respect to the mortgage assets. Each Mortgage Security will be identified in the related agreement, which will specify as to each Mortgage Security information regarding the original principal amount and outstanding principal balance of each Mortgage Security as of the cut-off date, as well as the annual pass-through rate or interest rate for each Mortgage Security sold to the trust.

If so specified in the related prospectus supplement, and in accordance with the rules of membership of Merscorp, Inc. and/or Mortgage Electronic Registration Systems, Inc., or

MERS®, assignments of the mortgages for the mortgage loans held by the related trust will be registered electronically through Mortgage Electronic Registration Systems, Inc., or MERS® System. With respect to mortgage loans registered through the MERS® System, MERS® shall serve as mortgagee of record solely as a nominee in an administrative capacity on behalf of the trust and will not have any interest in any of those mortgage loans.

The depositor will, with respect to each mortgage asset, deliver or cause to be delivered to the trustee, or to the custodian, a mortgage note endorsed to the trustee, the trust, or in blank, the original recorded mortgage with evidence of recording or filing indicated on it, and an assignment (except as to any mortgage loan registered on the MERS® System) to the trustee, the trust, or in blank of the mortgage in a form for recording or filing as may be appropriate in the state where the mortgaged property is located; or, in the case of each cooperative loan, the related cooperative note endorsed to the trustee, the trust, or in blank, the original security agreement, the proprietary lease or occupancy agreement, the assignment of the proprietary lease to the originator of the cooperative loan, the recognition agreement, the related stock certificate and related blank stock powers, a copy of the original filed financing statement, and an assignment to the trustee or the trust of the security agreement, the assignment of proprietary lease and the financing statement; provided, however, that if so indicated in the applicable prospectus supplement, the depositor will not deliver to the trustee or to the custodian mortgage notes endorsed to the trustee, the trust or in blank, assignments of mortgage to the trustee, the trust, or in blank, or assignments to the trustee or the trust of the other documents relating to cooperative loans described above.

With respect to any mortgage loan secured by a mortgaged property located in Puerto Rico, the mortgages with respect to these mortgage loans either (a) secure a specific obligation for the

benefit of a specified person or (b) secure an instrument transferable by endorsement. Endorsable Puerto Rico Mortgages do not require an assignment to transfer the related lien. Rather, transfer of endorsable mortgages follows an effective endorsement of the related mortgage note and, therefore, delivery of the assignment referred to in the paragraph above would be inapplicable. Direct Puerto Rico Mortgages that secure a specific obligation for the benefit of a specified person, however, require an assignment to be recorded with respect to any transfer of the related lien and the assignment for that purpose would be delivered to the trustee…

Interrogatory No. 2.: Witnesses:

COLLEEN IRBY, ASSISTANT SECRETARY

DEBORAH BRIGNAC, VICE PRESIDENT

The following persons are Plaintiffs may use as expert witnesses to support their claims.

Plaintiffs and their expert witness may be contacted only through their counsel of record.

| | |
|---|---|
| *Michael Carrigan and Arthur Bernardo, expert witnesses, May only be contacted by formal discovery requests as an expert witness* **CERTIFIED FORENSIC LOAN AUDITORS** 13101 West Washington Blvd., Suite 140 Los Angeles CA 90066    a. *310-432-6304* | All matters set forth in the Property Securitization Analysis Report attached hereto as Exhibit A. |

Interrogatory No. 2. Documents:
MARCH 7, 2006
   Instrument #
   2006084331
Official Records, COUNTY OF ALAMEDA
   CALIFORNIA
JOSE BARRIONUEVO AND FLOR
   BARRIONUEVO (Borrower)

WASHINGTON MUTUAL BANK (Lender)
Loan # 0706938776
FEBRUARY 28, 2006
WASHINGTON MUTUAL
BANK (Lender)
Principal Amount:
US $1,720,000.00
Loan # 0706938776

| | | | |
|---|---|---|---|
| APRIL 7, 2009 Instrument # 2009101035 Official Records, COUNTY OF | NOTICE OF DEFAULT CALIFORNIA RECONVETANCE COMPANY COLLEEN IRBY | MAY 1, 2006 | WMALT SERIES 2006-AR4 TRUST |
| OCTOBER 19, 2010 Instrument # 2010304598 Official Records, COUNTY OF | NOTICE OF TRUSTEE'S SALE CALIFORNIA RECONVEYANCE | | |

Pooling and Servicing Agreement:

http://www.sec.gov/Archives/edgar/data/1361533/000127727706000501/exh41to8kpsawmalt2006_ar4a.htm

Certified Forensic Loan Auditors, LLC, Property Securitization Analysis Report.

Interrogatory No. 4.:

The loan was originally made to WASHINGTON MUTUAL BANK and was sold and

transferred to WMALT SERIES 2006-AR4 TRUST. There is no record of Assignments to

either the Sponsor or Depositor as required by the Pooling and Servicing Agreement.

On May 30, 2006, which is the closing date, the mortgage loans that support the certificates

will be sold by Washington Mutual Mortgage Securities Corp., the sponsor of the

securitization transaction, to WaMu Asset Acceptance Corp., the depositor. On the closing

date, the depositor will sell the mortgage loans and related assets to the Washington Mutual

Mortgage Pass-Through Certificates WMALT Series 2006-AR4 Trust. In exchange for the

mortgage loans and related assets, the Trust will issue the certificates pursuant to the order of the depositor.

The sponsor purchased the mortgage loans directly or indirectly from affiliated or unaffiliated third parties who either originated the mortgage loans or purchased the mortgage loans through correspondent or broker lending. Approximately 23.5%, 16.4% and 13.0% of the mortgage loans (by principal balance as of May 1, 2006) were originated by Countrywide Home Loans, Inc. ("Countrywide Home Loans"), GMAC Mortgage Corporation and First Magnus Financial Corporation, respectively.

Approximately 76.5% of the mortgage loans (by principal balance as of May 1, 2006) will be serviced by Washington Mutual Bank. Approximately 23.5% of the mortgage loans (by principal balance as of May 1, 2006) will be serviced by Countrywide Home Loans or an affiliate thereof. With respect to the mortgage loans serviced by Countrywide Home Loans, Washington Mutual Bank, as servicer, on behalf of the Trust, will take actions required or permitted to be taken by the Trust as assignee of the sponsor's rights under the Countrywide servicing agreement (including making requests or demands or giving consents to Countrywide Home Loans, and receiving notices from Countrywide Home Loans).

Some servicing functions will be performed by Washington Mutual Mortgage Securities Corp., as administrative agent of Washington Mutual Bank. Some servicing functions will be outsourced to third party vendors.

Some mortgage loans, other than mortgage loans serviced by Countrywide Home Loans, will be serviced by the respective originators of those mortgage loans on an interim basis until the servicing is transferred to Washington Mutual Bank. By July 1, 2006, the servicing of those mortgage loans is expected to have been transferred to Washington Mutual Bank.

The trustee of the Trust will be LaSalle Bank National Association, and the Delaware trustee will be Christiana Bank & Trust Company.

Assignment of Trust Assets

At the time of issuance of any series of securities, the depositor will cause the pool of mortgage assets or Mortgage Securities to be transferred to the related trust, together with all principal and interest received on or with respect to the mortgage assets or Mortgage Securities after the related cut-off date, other than principal and interest due on or before the cut-off date and other than any retained interest. The trustee will, concurrently with the assignment of mortgage assets or Mortgage Securities, deliver the securities to the depositor in exchange for the trust assets. Each mortgage asset will be identified in a schedule appearing as an exhibit to the related agreement. The schedule of mortgage assets will include detailed information as to the mortgage assets held by the trust, including the outstanding principal balance of each mortgage asset after application of payments due on the cut-off date, information regarding the interest rate on the mortgage asset, the interest rate net of the sum of the rates at which the servicing fee and the retained interest, if any, are calculated, the retained interest, if any, the current scheduled monthly payment of principal and interest, the maturity of the mortgage note, the value of the mortgaged property and other information with respect to the mortgage assets. Each Mortgage Security will be identified in the related agreement, which will specify as to each Mortgage Security information regarding the original principal amount and outstanding principal balance of each Mortgage Security as of the cut-off date, as well as the annual pass-through rate or interest rate for each Mortgage Security sold to the trust.

If so specified in the related prospectus supplement, and in accordance with the rules of membership of Merscorp, Inc. and/or Mortgage Electronic Registration Systems, Inc., or

MERS®, assignments of the mortgages for the mortgage loans held by the related trust will be registered

electronically through Mortgage Electronic Registration Systems, Inc., or MERS® System. With respect to mortgage loans registered through the MERS® System, MERS® shall serve as mortgagee of record solely as a nominee in an administrative capacity on behalf of the trust and will not have any interest in any of those mortgage loans.

The depositor will, with respect to each mortgage asset, deliver or cause to be delivered to the trustee, or to the custodian, a mortgage note endorsed to the trustee, the trust, or in blank, the original recorded mortgage with evidence of recording or filing indicated on it, and an assignment (except as to any mortgage loan registered on the MERS® System) to the trustee, the trust, or in blank of the mortgage in a form for recording or filing as may be appropriate in the state where the mortgaged property is located; or, in the case of each cooperative loan, the related cooperative note endorsed to the trustee, the trust, or in blank, the original security agreement, the proprietary lease or occupancy agreement, the assignment of the proprietary lease to the originator of the cooperative loan, the recognition agreement, the related stock certificate and related blank stock powers, a copy of the original filed financing statement, and an assignment to the trustee or the trust of the security agreement, the assignment of proprietary lease and the financing statement; provided, however, that if so indicated in the applicable prospectus supplement, the depositor will not deliver to the trustee or to the custodian mortgage notes endorsed to the trustee, the trust or in blank, assignments of mortgage to the trustee, the trust, or in blank, or assignments to the trustee or the trust of the other documents relating to cooperative loans described above.

With respect to any mortgage loan secured by a mortgaged property located in Puerto Rico, the mortgages with respect to these mortgage loans either (a) secure a specific obligation for the benefit of a specified person or (b) secure an instrument transferable by endorsement. Endorsable Puerto Rico Mortgages do not require an assignment to transfer the related lien. Rather, transfer of endorsable mortgages follows an effective endorsement of the related mortgage note and, therefore, delivery of the assignment referred to in the paragraph above would be inapplicable. Direct Puerto Rico Mortgages that secure a specific obligation for the benefit of a specified person, however, require an assignment to be recorded with respect to any transfer of the related lien and the assignment for that purpose would be delivered to the trustee...

Interrogatory No. 5.: Witnesses:

COLLEEN IRBY, ASSISTANT SECRETARY

DEBORAH BRIGNAC, VICE PRESIDENT

The following persons are Plaintiffs may use as expert witnesses to support their claims. Plaintiffs and their expert witness may be contacted only through their counsel of record.

| | |
|---|---|
| *Michael Carrigan and Arthur Bernardo, expert witnesses, May only be contacted by formal discovery requests as an expert witness* **CERTIFIED FORENSIC LOAN AUDITORS** 13101 West Washington Blvd., Suite 140 Los Angeles CA 90066     a. 310-432-6304 | All matters set forth in the Property Securitization Analysis Report attached hereto as Exhibit A. |

Interrogatory No. 6. Documents:
MARCH 7, 2006
    Instrument #
    2006084331
Official Records, COUNTY OF ALAMEDA
    CALIFORNIA
JOSE BARRIONUEVO AND FLOR
    BARRIONUEVO (Borrower)

WASHINGTON MUTUAL BANK (Lender)
    Loan # 0706938776
FEBRUARY 28, 2006
WASHINGTON MUTUAL
    BANK (Lender)
    Principal Amount:
    US $1,720,000.00
    Loan # 0706938776

| APRIL 7, 2009 Instrument # 200910103 | NOTICE OF DEFAULT CALIFORNIA RECONVETANCE COMPANY COLLEEN IRBY | MAY 1, 2006 | WMALT SERIES 2006-AR4 TRUST |
|---|---|---|---|
| OCTOBER 19, 2010 Instrument # 201030459 | NOTICE OF TRUSTEE'S SALE CALIFORNIA RECONVEYANCE | | |

Pooling and Servicing Agreement:

http://www.sec.gov/Archives/edgar/data/1361533/000127727706000501/exh41to8kpsawma

lt2006_ar4a.htm

Certified Forensic Loan Auditors, LLC,  Property Securitization Analysis Report

Interrogatory No. 7: Facts:

Because Defendant Chase and Washington Mutual Mortgage Pass-Through Certificates

WMALT Series 2006-AR4 Trust violated the Pooling and Servicing Agreement, Chase is

not and never has been the servicer for the Trust, never communicated with anyone from the

Trust, and the Trust lacked the legal capacity to accept the loan, even though Washington

Mutual was paid in full for the loan. Therefore, there were no monies due and owing to Washington Mutual for Chase to acquire.

Interrogatory No. 8.: Witnesses:

JOSE BARRIONUEVO

COLLEEN IRBY, ASSISTANT SECRETARY

DEBORAH BRIGNAC, VICE PRESIDENT

The following persons are Plaintiffs may use as expert witnesses to support their claims. Plaintiffs and their expert witness may be contacted only through their counsel of record.

| | |
|---|---|
| *Michael Carrigan and Arthur Bernardo, expert witnesses, May only be contacted by formal discovery requests as an expert witness* **CERTIFIED FORENSIC LOAN AUDITORS** 13101 West Washington Blvd., Suite 140 Los Angeles CA 90066     a. *310-432-6304* | All matters set forth in the Property Securitization Analysis Report attached hereto as Exhibit A. |

Interrogatory No. 9. Documents:
MARCH 7, 2006
  Instrument #
    2006084331
Official Records, COUNTY OF ALAMEDA
    CALIFORNIA
JOSE BARRIONUEVO AND FLOR
    BARRIONUEVO (Borrower)

    WASHINGTON MUTUAL BANK (Lender)
     **Loan #  0706938776**
FEBRUARY 28, 2006
WASHINGTON MUTUAL
    BANK (Lender)
    Principal Amount:
    US $1,720,000.00
   **Loan # 0706938776**

| APRIL 7, 2009 Instrument # 200910103 | NOTICE OF DEFAULT CALIFORNIA RECONVETAN CE COMPANY COLLEEN | MA Y 1, 2006 | WMALT SERIES 2006-AR4 TRU ST |
|---|---|---|---|
| OCTOBER 19, 2010 Instrument # 201030459 | NOTICE OF TRUSTEE'S SALE CALIFORNIA | | |

Pooling and Servicing Agreement:

http://www.sec.gov/Archives/edgar/data/1361533/000127727706000501/exh41to8kpsaw malt2006_ar4a.htm

Certified Forensic Loan Auditors, LLC, Property Securitization Analysis Report.

Dated: March 13, 2013

/s/ Michael Yesk

Counsel for plaintiff

VERIFICATION

I, Flor Barrionuevo, am the Plaintiff in the above-entitled action. I have read the foregoing Interrogatories and know the contents thereof of my own personal knowledge. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Pleasant Hill, California.

DATED: March 1, 2013       _Flor M Barrionuevo._
                           Flor Barrionuevo

**EXHIBIT E**

## Hedger, John

| | |
|---|---|
| **From:** | Michael Yesk [yesklaw@gmail.com] |
| **Sent:** | Wednesday, May 08, 2013 5:00 PM |
| **To:** | Hedger, John |
| **Subject:** | RE: Barrionuevo v. Chase; expert deposition |
| **Attachments:** | Barrionuevo_LVL3_041513 New Audit.docx; Affidavit.pdf |

Here are the updated reports.

Michael Yesk
Yesk Law
925-849-5525

**From:** Hedger, John [mailto:hedgerj@bryancave.com]
**Sent:** Wednesday, May 08, 2013 1:54 PM
**To:** 'Michael Yesk'
**Subject:** RE: Barrionuevo v. Chase; expert deposition
**Importance:** High

Mr. Yesk,

I previously emailed you to advise that of the three dates you suggested, the afternoon of May 13 is available for me. By that, I suggest the deposition take place at 1:00 pm. Please confirm before 4:30 pm. If we cannot get this deposition on calendar, I will need to seek relief from Judge Chen.

Please note you have also failed to provide me any information about Michael Carrigan per your email of April 29.

John C. Hedger, Esq.
Bryan Cave LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
phone: (415) 675-3427
fax: (415) 675-3627
hedgerj@bryancave.com

**From:** Michael Yesk [mailto:yesklaw@gmail.com]
**Sent:** Monday, May 06, 2013 6:44 PM
**To:** Hedger, John
**Subject:** RE: Barrionuevo v. Chase; expert deposition

I am awaiting confirmation.

Michael Yesk
Yesk Law
925-849-5525

**From:** Hedger, John [mailto:hedgerj@bryancave.com]
**Sent:** Monday, May 06, 2013 6:41 PM
**To:** 'Michael Yesk'

6/5/2013

**Subject:** RE: Barrionuevo v. Chase; expert deposition

Have you confirmed those with your expert?

John C. Hedger, Esq.
Bryan Cave LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
phone: (415) 675-3427
fax: (415) 675-3627
hedgerj@bryancave.com

---

**From:** Michael Yesk [mailto:yesklaw@gmail.com]
**Sent:** Monday, May 06, 2013 6:40 PM
**To:** Hedger, John
**Subject:** RE: Barrionuevo v. Chase; expert deposition

No for Wednesday. I am free May 13, 17, or 21. Do any of those dates work?

Michael Yesk
Yesk Law
925-849-5525

---

**From:** Hedger, John [mailto:hedgerj@bryancave.com]
**Sent:** Monday, May 06, 2013 6:24 PM
**To:** 'Michael Yesk'
**Subject:** RE: Barrionuevo v. Chase; expert deposition
**Importance:** High

Mr. Yesk,

You did not respond. Are we going forward with this deposition on Wednesday or not? If not, I need available dates NOW please.

John C. Hedger, Esq.
Bryan Cave LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
phone: (415) 675-3427
fax: (415) 675-3627
hedgerj@bryancave.com

---

**From:** Hedger, John
**Sent:** Wednesday, May 01, 2013 4:58 PM
**To:** 'Michael Yesk'
**Subject:** RE: Barrionuevo v. Chase; expert deposition

Mr. Yesk,

I need a date certain to make the proper arrangements. Please advise no later than 4:00 pm tomorrow.

John C. Hedger, Esq.

6/5/2013

Bryan Cave LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
phone: (415) 675-3427
fax: (415) 675-3627
hedgerj@bryancave.com

---

**From:** Michael Yesk [mailto:yesklaw@gmail.com]
**Sent:** Monday, April 29, 2013 6:22 PM
**To:** Hedger, John
**Subject:** RE: Barrionuevo v. Chase; expert deposition

I will confirm as soon as I hear.

Michael Yesk
Yesk Law
925-849-5525

---

**From:** Hedger, John [mailto:hedgerj@bryancave.com]
**Sent:** Monday, April 29, 2013 5:54 PM
**To:** 'Michael Yesk'
**Subject:** RE: Barrionuevo v. Chase; expert deposition

That should be fine if you are confirming for that day.

John C. Hedger, Esq.
Bryan Cave LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
phone: (415) 675-3427
fax: (415) 675-3627
hedgerj@bryancave.com

---

**From:** Michael Yesk [mailto:yesklaw@gmail.com]
**Sent:** Monday, April 29, 2013 5:54 PM
**To:** Hedger, John
**Subject:** RE: Barrionuevo v. Chase; expert deposition

Mr. Michael Carrigan will be the testifying witness, as Mr. Bernard is no longer with the firm. I will send you his updated information as soon as I receive it. Does May 8 work for you?

Michael Yesk
Yesk Law
925-849-5525

---

**From:** Hedger, John [mailto:hedgerj@bryancave.com]
**Sent:** Monday, April 29, 2013 4:47 PM
**To:** 'Michael Yesk'
**Subject:** Barrionuevo v. Chase; expert deposition

6/5/2013

Mr. Yesk,

I hope your procedure went well.  Please advise of your availability to fly next week so we may re-set your expert's deposition.
Thank you.

John C. Hedger, Esq.
Bryan Cave LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
phone: (415) 675-3427
fax: (415) 675-3627
hedgerj@bryancave.com

---

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2013

6/5/2013



**Certified Forensic Loan Auditors**

---

# *CERTIFIED FORENSIC LOAN AUDITORS, LLC*

13101 West Washington Blvd., Suite 140, Los Angeles, CA 90066
Phone: 310-432-6304; Sales@CertifiedForensicLoanAuditors.com
www.CertifiedForensicLoanAuditors.com

---

# *PROPERTY*
# *SECURITIZATION ANALYSIS REPORT*[TM]

**"This is a Securitization Analysis Report and not a Forensic Audit Report"**

## *Prepared for:*

### *Jose and Flor Barrionuevo*

#### *For Property Address*

#### *5931 Annandale Way*
#### *Dublin, CA 94568*

## *Prepared on:*

### *April 15, 2013*

---

Disclosure: You have engaged Certified Forensic Loan Auditors, LLC to examine your real estate documents. This information is not to be construed as legal advice or the practice of law, pursuant to *Business and Professions Code § 6125 et seq*, it is the intent of CFLA, its members, auditors and independent contractors, not to engage in activities that could be considered the practice of law by conduct exhibiting any of the following practices: *"...the doing and/or performing of services in a court of justice in any matter depending therein throughout the various stages and in conformity with the adopted rules of procedure. It includes legal advice and counsel and the preparation of legal instruments and contracts by which the legal rights are secured although such matter may or may not be depending in a court."*

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



Certified Forensic Loan Auditors

# SECTION 1:    TRANSACTION DETAILS

## BORROWER & CO-BORROWER:

| BORROWER | CO-BORROWER |
|---|---|
| Jose Barrionuevo | Flor Barrionuevo |
| **CURRENT ADDRESS** | **SUBJECT ADDRESS** |
| 5931 Annandale Way, Dublin, CA 94568 | 5931 Annandale Way, Dublin, CA 94568 |

## TRANSACTION PARTICIPANTS

| AMOUNT | MORTGAGE SERVICER | MORTGAGE NOMINEE/BENEFICIARY |
|---|---|---|
| $1,720,000.00 | JPMorgan Chase Bank f/k/a Washington Mutual Bank | Washington Mutual Bank, FA 400 East Main Street Stockton, CA 95290 |
| **ORIGINAL MORTGAGE LENDER** | **MORTGAGE TRUSTEE** | **TITLE COMPANY** |
| Washington Mutual Bank, FA 400 East Main Street Stockton, CA 95290 | California Reconveyance Company | Alliance Title Company |

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-



# SECTION 2:    SECURITIZATION
## <u>SECURITIZATION PARTICIPANTS:</u>

| ORIGINATOR/LENDER | SPONSOR/SELLER | DEPOSITOR |
|---|---|---|
| Washington Mutual Bank | WASHINGTON MUTUAL BANK | WAMU ASSET ACCEPTANCE CORP. |
| **ISSUING ENTITY** | **TRUSTEE** | **MASTER SERVICER/ SERVICER** |
| WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR4 TRUST | <u>Trustee:</u> Deutsche Bank National Trust Company <br><br> <u>Delaware Trustee:</u> Deutsche Bank Trust Company Delaware | Washington Mutual Bank |
| **CUSTODIAN** | **CUT – OFF DATE** | **CLOSING DATE** |
| Washington Mutual Bank fsb | April 1, 2006 | On or about April 25, 2006 |

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

Prospectus Supplement to Prospectus Dated January 6, 2006

# WaMu Mortgage Pass-Through Certificates, Series 2006-AR4

## WaMu Asset Acceptance Corp.
### Depositor



### Washington Mutual Bank
**Sponsor and Servicer**

## $909,714,200
### (Approximate)

*Underwriter*
# WaMu Capital Corp.

April 20, 2006

http://www.sec.gov/Archives/edgar/data/1317069/000095011706001820/a41821.htm#TRUSTEESs

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



Certified Forensic Loan Auditors

## SUMMARY OF TRANSACTION AND TRANSACTION PARTIES

### SUMMARY INFORMATION

*The following summary highlights selected information from this prospectus supplement. It does not contain all of the information that you need to consider in making your investment decision. To understand the terms of the offered certificates, read carefully this entire prospectus supplement and the accompanying prospectus.*

*This summary provides an overview of certain calculations, cash flows and other information to aid your understanding. This summary is qualified by the full description of these calculations, cash flows and other information in this prospectus supplement and the accompanying prospectus.*

### TRANSACTION PARTICIPANTS

On April 25, 2006, which is the closing date, the mortgage loans that support the certificates will be sold by Washington Mutual Bank, the sponsor of the securitization transaction, to WaMu Asset Acceptance Corp., the depositor. On the closing date, the depositor will sell the mortgage loans and related assets to the WaMu Mortgage Pass-Through Certificates Series 2006-AR4 Trust. In exchange for the mortgage loans and related assets, the Trust will issue the certificates pursuant to the order of the depositor.

The mortgage loans will be serviced by Washington Mutual Bank, as servicer. Some servicing functions will be performed by Washington Mutual Mortgage Securities Corp., as administrative agent of the servicer. Some servicing functions will be outsourced to third party vendors.

The trustee of the Trust will be Deutsche Bank National Trust Company, and the Delaware trustee will be Deutsche Bank Trust Company Delaware. Washington Mutual Bank fsb will have possession of and will review the mortgage notes, mortgages and other legal documents related to the mortgage loans as custodian for the Trust.

### WHAT YOU OWN

**Your certificates represent interests *only* in the assets of the issuing entity. All payments to you will come only from the amounts received in connection with those assets.**

The Trust owns a pool of mortgage loans and other assets, as described under "The Trust" in this prospectus supplement.

There are no outstanding series or classes of securities that are backed by the assets of the issuing entity or otherwise have claims on the assets of the issuing entity, other than the certificates. The

Page | 5

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



depositor does not expect that any securities representing additional interests in or claims on the assets of the issuing entity will be issued in the future.

**Information About the Mortgage Pool**

The mortgage pool consists of 1,618 mortgage loans with an aggregate principal balance as of April 1, 2006 of approximately $932,087,563. All of the mortgage loans are secured by residential properties (or shares of cooperative apartments) and each has an original term to maturity of not more than 40 years.

After an initial fixed-rate period of one, two, three or twelve months, the interest rate on each mortgage loan will adjust monthly to equal the sum of an index and a margin. As of April 1, 2006, approximately 29.5% of the mortgage loans were still in their initial fixed-rate periods. The interest rates on the mortgage loans are subject to overall maximum and minimum interest rate limits.

The index for the mortgage loans in loan group 1 will be One-Year MTA, the 12-month moving average yield on United States Treasury Securities adjusted to a constant maturity of one year. The index for the mortgage loans in loan group 2 will be COFI, the 11th District Monthly Weighted Average Cost of Funds Index published by the Federal Home Loan Bank of San Francisco.

While the interest rate on each mortgage loan will adjust monthly (after the initial fixed-rate period), the minimum monthly payment on each mortgage loan generally will adjust only annually. On each annual payment adjustment date, the minimum monthly payment generally will not increase or decrease by more than 7.5%. As a result, the interest due with respect to a mortgage loan for any given month may, under certain circumstances, exceed the monthly payment for that month. In that case, payment of the excess of interest due over the monthly payment will be deferred and that excess will be added to the principal balance

S-5

of that mortgage loan in the form of "negative amortization." *See "Description of the Mortgage Pool" in this prospectus supplement.*

In the event of a material breach of the representations and warranties made by the sponsor or the depositor with respect to the mortgage loans, or in the event that a required loan document is not included in the mortgage files for the mortgage loans, the breaching party will, unless it has cured the breach in all material respects, be required to repurchase the affected mortgage loan or substitute a new mortgage loan for the affected mortgage loan. *See "Description of the Mortgage Pool— Representations and Warranties Regarding the Mortgage Loans" in this prospectus supplement.*

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

*For a further description of the mortgage loans, see "Description of the Mortgage Pool" and Appendix B in this prospectus supplement.*

<u>http://www.sec.gov/Archives/edgar/data/1317069/000095011706001820/a41821.htm#SUMMARYs</u>

## POOLING AND SERVICING AGREEMENT

*WaMu ASSET ACCEPTANCE CORP.,*

*as Depositor*

*and*

*WASHINGTON MUTUAL BANK,*

*as Servicer*

*and*

*DEUTSCHE BANK NATIONAL TRUST COMPANY,*

*as Trustee*

*and*

*DEUTSCHE BANK TRUST COMPANY DELAWARE,*

*as Delaware Trustee*

*POOLING AND SERVICING AGREEMENT*

*$932,087,563.09*

*WaMu Mortgage Pass-Through Certificates Series 2006-AR4 Trust*

*WaMu Asset Acceptance Corp.*

*WaMu Mortgage Pass-Through Certificates*

*Series 2006-AR4*

*Cut-Off Date: April 1, 2006*

Page | 7

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

# POOLING AND SERVICING AGREEMENT
## Section 2.01

### ARTICLE II

Creation of the Trust; Conveyance of the Mortgage Pool Assets, REMIC I Regular Interests,
REMIC II Regular Interests and REMIC III Regular Interests; REMIC Election
and Designations; Original Issuance of Certificates

Section 2.01. *Creation of the Trust.* The Trust was created pursuant to the Original Trust Agreement and is hereby continued. As set forth in the Original Trust Agreement, the Trust shall be known as "WaMu Mortgage Pass-Through Certificates Series 2006-AR4 Trust". The purpose of the Trust is, and the Trust shall have the power and authority, to engage in the following activities, all as provided by and subject to the terms of this Agreement:

    **(i) to acquire, hold, lease, manage, administer, control, invest, reinvest, operate and/or transfer the Mortgage Pool Assets, the REMIC II Assets, the REMIC III Assets and the REMIC III Regular Interests (other than the Class 2A-1A Certificates);**

    **(ii) to issue the REMIC I Regular Interests, the REMIC II Regular Interests, the REMIC III Regular Interests, the Class R-1, Class R-2 and Class R-3 Residual Interests and the Certificates;**

    **(iii) to make distributions to the REMIC I Regular Interests, the REMIC II Regular Interests, the REMIC III Regular Interests and the Certificates; and**

    **(iv) to engage in such other activities, including entering into agreements, as are described in or required by the terms of this Agreement or as are necessary, suitable or convenient to accomplish the foregoing or incidental thereto.**

Deutsche Bank National Trust Company is hereby appointed as the trustee of the Trust, to have all the rights, duties and obligations of the Trustee with respect to the Trust expressly set forth hereunder, and Deutsche Bank National Trust Company hereby accepts such appointment and the trust created hereby. Deutsche Bank Trust Company Delaware is hereby appointed as the Delaware trustee of the Trust, to have all the rights, duties and obligations of the Delaware Trustee with respect to the Trust hereunder, and Deutsche Bank Trust Company Delaware hereby accepts such appointment and the trust created hereby. It is the intention of the Company, the Servicer, the Trustee and the Delaware Trustee that the Trust constitute a statutory trust under the Statutory Trust Statute, that this Agreement constitute the governing instrument of the Trust, and that this Agreement amend and restate the Original Trust Agreement. The parties hereto acknowledge and agree that, prior to the execution and delivery hereof, the Delaware Trustee has filed the Certificate of Trust. The parties hereto acknowledge that the Trust includes two separate pools of mortgage loans (referred to herein as Loan Groups), and that the assets of each Loan Group are available to make payments to the holders of Certificates as provided in the definitions of "REMIC I Distribution Amount," "REMIC II Distribution Amount" and "REMIC III Distribution Amount" and in Section 4.01, Section 4.04 and Section 4.05 hereof.

**The assets of the Trust shall remain in the custody of the Trustee or the Custodian, on behalf of the Trust, and shall be owned by the Trust. Moneys to the credit of the Trust shall be held by the Trustee and invested as provided herein. All assets received and held by the Trust will not be subject to any right, charge, security interest, lien or claim of any kind in favor of either of the institution acting as Trustee or the institution acting as Delaware Trustee in its own right, or any Person claiming through either. Neither the Trustee nor the Delaware Trustee shall have the power or authority to transfer, assign, hypothecate, pledge or otherwise dispose of any of the assets of the Trust to any Person, except as permitted herein. No creditor of a beneficiary of the Trust, of the Trustee, of the Delaware Trustee, of the Servicer or of the Company shall have any right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the Trust, except in accordance with the terms of this Agreement.**

Page | 8

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



Certified Forensic Loan Auditors

**On the Closing Date, the Company shall deposit in the Certificate Account the amount of $882,237.47 (the "Initial Deposit"), representing a portion of the Interest Distribution Amount for the REMIC I, REMIC II and REMIC III Regular Interests for the first Distribution Date.**

http://www.sec.gov/Archives/edgar/data/1355536/000127727706000443/exh41to8kpsawamu_ar4.htm

**New York State Trust Law Statutes state:**

Unless an asset is transferred into a lifetime trust, the asset does not become trust property. (NY Estates, Powers and Trust Law § 7-1.18).

A trustee's act that is contrary to the trust agreement is void. (NY Estates, Powers and Trust Law § 7-2.4)

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



# SECTION 3:    FORECLOSURE

### Recorded Events on the Loan Inclnding Foreclosnre Issues and Securitization

| Recorded Chain of Mortgage Possession | | Chain of Note Possession | |
|---|---|---|---|
| Date | Original Mortgage | Date | Note Holder |
| March 7, 2006<br>Instrument #<br>84331<br>Official Records,<br>Alameda County<br>California | Jose and Flor Barrionuevo<br>(Borrower)<br><br>Washington Mutual Bank, FA<br>(Lender) | February 28, 2006 | Washington Mutual Bank, FA<br><br>( Lender)<br>Principal Amount:<br>$1,720,000.00<br><br>**LOAN # 03-2099-070693877-6** |
| April 7, 2009<br>Instrument #<br>101035<br>Official Records,<br>Alameda County<br>California | **Notice of Default** | April 1, 2006 | WAMU MORTGAGE PASS-<br>THROUGH CERTIFICATES<br>SERIES 2006-AR4 TRUST<br>Lender<br>Principal Amount:<br>$1,720,000.00 |
| July 14, 2009; October 19, 2010;<br>February 2, 2012<br>Instrument #<br>223286; 304598; 40100<br>Official Records,<br>Alameda County<br>California | **Three Notices of Trustee's Sale** | <u>Memo:</u><br>September 25, 2008 | Acquisition of operations of<br>Washington Mutual Bank by<br>JPMorgan Chase Bank through<br>coordination by the FDIC |

*Note: This analysis excludes review of the $214,785 Washington Mutual Bank, FA loan recorded 5/10/06, subsequent to subject loan.*


**Sample web site links re. JPMorgan acquisition of Washington Mutual Bank operations:**
**http://www.fdic.gov/bank/individual/failed/wamu.html**
**http://en.wikipedia.org/wiki/Washington_Mutual**

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



Certified Forensic Loan Auditors

# REPORT SUMMARY

**Deed of Trust:**

- On February 28, 2006, DebtorsJose and Flor Barrionuevo executed a negotiable promissory note and a security interest in the form of a MORTGAGE in the amount of $ 1,720,000.00. This document was filed as document number 84331 in the Official Records of Alameda County. *The original lender of the promissory note and beneficiary of the Deed of Trust is Washington Mutual Bank, FA.*

**Securitization (The Note):**

- The NOTE may have been sold, transferred, assigned and securitized into the WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR4 TRUSTwith a Closing Date of April 25, 2006.

**Notice of Default:**

- On April 7, 2009, a Notice of Default was recorded in the Official Records, Alameda County with instrument number 101035.

**Three Notices of Trustee's Sale:**

- On July 14, 2009, October 19, 2010, and February 2, 2012, three Notices of Trustee's Sale were recorded in the Official Records, Alameda County with instrument numbers223286, 30498, and 40100, respectively.

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

# BLOOMBERG SEARCH SECTION

On **April 15, 2013**, I researched the Bloomberg online Database at the request of **Certified Forensic Loan Auditors, LLC** on behalf of **Jose and Flor Barrionuevo** whose property address is noted herein above. The Loan Level Data search conducted using Bloomberg's terminal did not reveal matching characteristics based on the Loan Number:**03-2099-070693877-6**; Original Amount: **$1,720,000.00**; Origination Date: **February 28, 2006**; Location of Property: **CA**; Property Type: **Planned Unit Development**; Occupancy: **Owner Occupied**; Zip Code**94568; Loan Type: 30 year Adjustable Rate Mortgage with 125% of principal negative amortization cap.** However, examiner did locate a prospective REMIC TRUST within the Securities Exchange Commission (SEC) website that matches the characteristics for the possibility of securitizing this loan. Bloomberg snapshots of that Trust are provided below. This trust is the **WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR4 TRUST. Other possibilities for this loan include placement within the Washington Mutual Bank portfolio of loans held in inventory or for sale, and perhaps used as collateral to increase secured borrowings. Although JPMorgan Chase Bank purchased the operations of Washington Mutual Bank, they may not have properly endorsed the subject note nor perfected the security interest in the note pursuant to the California Uniform Commercial Code.**

## DESCRIPTION OF SECURITY FROM BLOOMBERG



*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

## DEAL DESCRIPTION



## STRUCTURED FINANCE NOTES SCREEN
### Lists the primary parties to the securitization transaction

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

## COMMENT SECTION PERTAINING TO TRUST INCLUDING CREDIT ENHANCEMENTS
**May further offset risks of owners or provide reimbursements to certain certificate holders**
Collateral has "a negative amortization feature."



### VIEW ALL LOAN CLASSES SCREEN
This screen shows the first 19 of 25 investment classes into which the trust was split.

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

## LOAN COLLATERAL PERFORMANCE

### Only a handful of loan modifications each month in spite of a 20-24% 90 day+ default rate in this trust predominantly targeting California homeowners

Analyze Agency CMO Mort... WAMU 2006-AR4 B1 Mtge CLP Message

`<HELP>` for explanation, `<MENU>` for similar functions.
Enter 2<Go> - 17<Go> for loan level details

| 90 Options | | | | | | Collateral Performance |
|---|---|---|---|---|---|---|
| WAMU 2006-AR4  Collateral Group | | | | | | Source ○ Loan ○ Remit |
| | 03/2013 | 02/2013 | 01/2013 | 12/2012 | 11/2012 | 10/2012 | 09/2012 |
| USD Bal Wtd Avg | | | | | | | |
| Balance (H) | 241,142 | 242,589 | 245,358 | 250,441 | 254,995 | 257,353 | 261,054 |
| Pool Factor | 0.259 | 0.260 | 0.263 | 0.269 | 0.274 | 0.276 | 0.280 |
| 2) # of Loans | 468 | 470 | 475 | 479 | 488 | 490 | 498 |
| WAC | 3.024 | 3.032 | 3.020 | 3.030 | 3.032 | 3.039 | 3.042 |
| WAM/Age | 299/ 90 | 300/ 89 | 300/ 88 | 301/ 87 | 303/ 86 | 304/ 85 | 305/ 84 |
| WALTV (Amort) % | 67.31 | 67.84 | 67.65 | 67.53 | 67.86 | 68.19 | 68.40 |
| HPI WALTV (Amort)% | 92.60 | 94.31 | 94.67 | 94.42 | 96.66 | 97.12 | 97.31 |
| 3) Delinq 30 days % | 5.10 | 4.96 | 5.08 | 4.94 | 4.42 | 4.41 | 2.96 |
| 4) Delinq 60 days % | 1.73 | 1.91 | 1.22 | 1.06 | 1.22 | 1.31 | 2.56 |
| 5) Delinq 90 days % | 3.31 | 3.01 | 3.13 | 3.18 | 2.71 | 4.32 | 3.81 |
| 6) Bankruptcy % | 2.86 | 2.89 | 3.47 | 3.89 | 4.60 | 3.66 | 3.83 |
| 7) Foreclosure % | 13.07 | 13.08 | 13.35 | 14.07 | 13.73 | 15.29 | 15.40 |
| 8) REO % | 0.54 | 0.74 | 0.49 | 0.48 | 1.37 | 0.58 | 0.58 |
| 9) Delinq. 60+ % | 21.51 | 21.63 | 21.40 | 22.68 | 23.63 | 25.16 | 26.15 |
| 10) Delinq. 90+ % | 19.78 | 19.72 | 19.44 | 21.62 | 22.41 | 20.85 | 23.61 |
| Limited Doc. % | 85.47 | 85.34 | 85.32 | 85.52 | 85.56 | 85.31 | 85.03 |
| Credit Score | 729 | 720 | 720 | 720 | 720 | 720 | 720 |
| 11) Mod # of loans | 2 | 5 | 1 | 1 | 3 | 1 | 2 |
| 12) Mod Balance (H) | 1,059 | 1,582 | 2,951 | 386 | 1,910 | 360 | 682 |
| Mod 1 Mo. CDR | 0.60 | 2.94 | 1.56 | 0.29 | 2.61 | 0.12 | 0.58 |
| Mod 1 Mo. Eff CDR | 2.96 | 6.08 | 13.39 | 17.29 | 8.16 | 9.77 | 6.64 |
| 1 Mo. SEV | 46.70 | 57.95 | 34.50 | 59.47 | 53.99 | 36.92 | 35.22 |
| Mod 1 Mo. Eff SEV | 78.75 | 82.34 | 42.56 | 64.97 | 68.76 | 41.03 | 50.78 |
| 17) Perfect Payer 24mth | 50.18 | 50.13 | 49.06 | 48.83 | 48.43 | 47.91 | 46.86 |
| Perfect Payer Life | 37.89 | 38.67 | 38.23 | 38.74 | 38.64 | 38.39 | 38.62 |
| Re-default % | 22.36 | 22.38 | 20.71 | 22.07 | 22.60 | 23.81 | 21.16 |
| Arm Collat. % | 100.00 | | | | | | |
| Balance < 417 | 20.27 | | | | | | |
| 1 Mo. CPR | 4.90 | 8.60 | 18.80 | 17.10 | 5.80 | 13.40 | 8.20 |
| Geo 1st % | CA 71.4 | CA 71.5 | CA 71.5 | CA 71.2 | CA 71.2 | CA 71.3 | CA 71.3 |
| Geo 2nd % | FL 3.5 | FL 6.4 | FL 6.6 | FL 6.6 | FL 6.6 | FL 6.5 | FL 6.5 |
| Geo 3rd % | NY 3.4 | NY 3.4 | NY 3.4 | NY 3.2 | NY 3.3 | NY 3.3 | NY 3.2 |
| Geo 4th % | NA 2.9 | NA 2.9 | NA 2.8 | NJ 2.1 | NJ 3.0 | NJ 3.0 | NJ 3.0 |
| Imp 1 Mo. CDR | 2.37 | 5.24 | 12.00 | 17.03 | 5.69 | 9.67 | 6.10 |
| Imp 1 Mo. VPR | 2.63 | 3.65 | 7.86 | 0.10 | 0.09 | 4.18 | 2.31 |

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

## PROSPECTUS PULLED FROM BLOOMBERG

Prospectus Supplement to Prospectus Dated January 6, 2006

# WaMu Mortgage Pass-Through Certificates, Series 2006-AR4

### WaMu Asset Acceptance Corp.
**Depositor**

### Washington Mutual Bank
**Sponsor and Servicer**

### $909,714,200
(Approximate)

Consider carefully the risk factors beginning on page S-20 in this prospectus supplement and page 5 in the accompanying prospectus.

The certificates will represent interests only in the issuing entity which is WaMu Mortgage Pass-Through Certificates Series 2006-AR4 Trust and will not represent interests in or obligations of Washington Mutual Bank, WaMu Asset Acceptance Corp., Washington Mutual, Inc. or any of their affiliates.

Neither these certificates nor the underlying mortgage loans are guaranteed by any agency or instrumentality of the United States.

This prospectus supplement may be used to offer and sell the offered certificates only if accompanied by the prospectus.

The WaMu Mortgage Pass-Through Certificates Series 2006-AR4 Trust will issue twenty classes of offered certificates and five classes of privately placed certificates. Each class of offered certificates (other than the Class PPP Certificates) will be entitled to receive monthly distributions of interest, principal or both, beginning on May 25, 2006. The certificate interest rate for each class of offered certificates, other than the residual certificates, will be variable, and will be based in part on the one-year MTA index, the COFI index or the LIBOR index, as described in this prospectus supplement. The table on page S-6 of this prospectus supplement contains a list of the classes of offered certificates, including the initial class principal balance, certificate interest rate, and special characteristics of each class.

The primary asset of the Trust will be a pool of first lien single-family residential mortgage loans whose interest rates (after an initial fixed-rate period) adjust monthly and which include a negative amortization feature. The Trust will also contain other assets, which are described on page S-38 of this prospectus supplement.

### Offered Certificates

| | |
|---|---|
| Total principal amount (approximate) | $909,714,200 |
| First payment date | May 25, 2006 |
| Interest and/or principal paid | Monthly |
| Last payment date | May 25, 2046 |

Credit enhancement for the offered certificates (other than the Class PPP Certificates) is being provided by five classes of privately offered certificates, which have an aggregate principal balance of approximately $22,373,363. Additional credit enhancement for the offered senior certificates (other than the Class PPP Certificates) is being provided by nine classes of offered subordinate certificates. Losses otherwise allocable to some senior certificates will instead be allocated to other senior certificates.

The underwriter listed below will offer the offered certificates at varying prices to be determined at the time of sale. The proceeds to WaMu Asset Acceptance Corp. from the sale of the offered certificates will be approximately 100.64% of the principal balance of the offered certificates plus accrued interest, before deducting expenses. The underwriter's commission will be the difference between the price it pays to WaMu Asset Acceptance Corp. for the offered certificates and the amount it receives from the sale of the offered certificates to the public.

Neither the SEC nor any state securities commission has approved or disapproved of the offered certificates or determined that this prospectus supplement or the prospectus is accurate or complete. Any representation to the contrary is a criminal offense.

*Underwriter*

## WaMu Capital Corp.

April 20, 2006

Page | 16

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

## CONCLUSION

## CHAIN OF TITLE



**ARROW LEGEND**

PURPLE – MORTGAGE DOCUMENTS
BLUE – SECURITIES CERTIFICATES
RED – INVESTOR FUNDS
GREEN – BORROWER FUNDS

Page | 17

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



ξ For traditional lending prior to Securitization, the original Deed recording was usually the only recorded document in the Chain of Title. That is because banks kept the loans, and did not sell the loan, hence, only the original recording being present in the banks name.

The advent of Securitization, especially through "Private Investors" and not Fannie Mae or Freddie Mac, involved an entirely new process in mortgage lending. With Securitization, the Notes and Deeds were sold once, twice, three times or more. Using the traditional model would involve recording new Assignments of the Deed and Note as each transfer of the Note or Deed of Trust occurred. Obviously, this required time and money for each recording.

(The selling or transferring of the Note is not to be confused with the selling of Servicing Rights, which is simply the right to collect payment on the Note, and keep a small portion of the payment for Servicing Fees. Usually, when a homeowner states that their loan was sold, they are referring to Servicing Rights.)

ξ Securitizing a Loan

Securitizing a loan is the process of selling a loan to Wall Street and private investors. it is a method with many issues to be considered. The methodology of securitizing a loan generally followed these steps:

- A Wall Street firm would approach other entities about issuing a "Series of Bonds" for sale to investors and would come to an agreement. In other words, the WallStreet firm "pre-sold" the bonds.

- The Wall Street firm would approach a lender and usually offer them a warehouse Line of Credit. The Warehouse Credit Line would be used to fund the loan. The Warehouse Line would be covered by restrictions resulting from the initial Pooling & Servicing Agreement Guidelines and Mortgage Loan Purchase Agreement. These documents outlined the procedures for the creation of the loans and the administering of the loans prior to, and after, the sale of the loans to Wall Street.

- The Lender, with the guidelines, essentially went out and found "buyers" for the loans, people who fit the general characteristics of the Purchase Agreement. (Guidelines were very general and most people could qualify." The Lender would execute the loan and fund it, collecting payments until there were enough loansfunded to sell to the Wall Street firm who could then issue the bonds.

- Once the necessary loans were funded, the lender would then sell the loans to the "Sponsor", usually either a subsidiary of the Wall Street firm, of a specially created Corporation of the lender. At this point, the loans are separated into "tranches" of loans, where they will be eventually turned into bonds.

- Next, the loans were "sold" to the "Depositor." This was a "Special Purpose Vehicle" designed with one purpose in mind. That was to create a "bankruptcy remote vehicle" where the lender or other entities are protected from what might happen to the loans, and/or

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



the loans are "protected" from the lender. The "Depositor" would be, once again, created by the Wall Street firm or the lender.

- Then the "Depositor" would place the loans into the Issuing Entity, which is another entity created solely for the purpose of selling the bonds.

- Finally, the bonds would be sold, with a Trustee appointed to ensure that the bondholders received their monthly payments.

ξ WASHINGTON MUTUAL BANK, FAwas a "correspondent lender" that originated mortgage loans. These loans, in turn, may have been sold and transferred into a "federally-approved securitization" trust named the WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR4 TRUST.

ξ The Note and Deed have taken two distinctly different paths. The Note may have been securitized into the WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR4 TRUST.

ξ The written agreement that created the WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR4 TRUSTis a "Pooling and Servicing Agreement" (PSA), and is a matter of public record, available on the website of the Securities Exchange Commission. The Trust is also described in a "Prospectus Supplement," also available on the SEC website. The Trust by its terms set a "CLOSING DATE" of ON OR ABOUT APRIL 25, 2006. The promissory note in this case became trust property in compliance with the requirement set forth in the PSA. The Trust agreement is filed under oath with the Securities and Exchange Commission. The acquisition of the assets of the subject Trust and the PSA are governed under the law.

ξ In view of the foregoing, the Assignment of Deed of Trust executed after the Trust's Closing Date would be a void act for the reason that it violated the express terms of the Trust instrument.

ξ The loan was originally made to WASHINGTON MUTUAL BANK, FA and may have been sold and transferred to WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR4 TRUST. There is no record of Assignments to either the Sponsor or Depositor as required by the Pooling and Servicing Agreement.

In Carpenter v. Longan 16 Wall. 271,83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity."

An obligation can exist with or without security. With no security, the obligation is unsecured but still valid. A security interest, however, cannot exist without an underlying existing obligation. It is impossible to define security apart from its relationship to the promise or obligation it secures. The obligation and the security are commonly drafted as separate documents – typically a promissory note and a deed of trust. If the creditor transfers the note but not the deed of trust, the transferee receives a secured note; the security follows the note, legally if not physically. If the transferee is given the deed of trust without the note accompanying it, the transferee has no meaningful rights except the possibility of legal action to compel the transferor to transfer the note as well, if such was the agreement. (Kelley v. Upshaw 91952) 39 C.2d 179, 246 P.2d 23; Polhemus v.

Page | 19

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



Trainer (1866) 30C 685).

"Where the mortgagee has "transferred" only the mortgage, the transaction is a nullity and his "assignee" having received no interest in the underlying debt or obligation, has a worthless piece of paper (4 Richard R. Powell), Powell on Real Property, § 37.27 [2] (2000).

By statute, assignment of the mortgage carries with it the assignment of the debt. . . Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable. The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. Without the agency relationship, the person holding only the trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust."

## DISCLAIMER

This report was based exclusively on the documentation provided. It also required that we make reasonable assumptions respecting disclosures and certain loan terms that, if erroneous, may result in material differences between our findings and the loan's actual compliance with applicable regulatory requirements. While we believe that our assumptions provide a reasonable basis for the review results, we make no representations or warranties respecting the appropriateness of our assumptions, the completeness of the information considered, or the accuracy of the findings. The contents of this report are being provided with the understanding that we are not providing legal advice, nor do we have any relationship, contractual or otherwise, with anyone other than the recipient. We do not, in providing this report, accept or assume responsibility for any other purpose.

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-



**Certified Forensic Loan Auditors**

## AFFIDAVIT OF FACTS

STATE OF _California_ )
                         ) sv.: AFFIDAVIT
COUNTY OF _Orange_ )

### RE: Jose and Flor Barrionuevo

I, MICHAEL CARRIGAN, a citizen of the United States and the State of California over the age of 21 years, and declare as follows, under penalty of perjury that the facts stated herein are true, correct and complete. The undersigned believes them to be true and admissible as evidence in a court of law, and if called upon as a witness, will testify as stated herein:

1. That I am a subscriber of the Bloomberg Professional Service, certified and licensed to use such service. I have completed the required training and engaged in continuing education with Bloomberg – both online and at Bloomberg live training events, to stay abreast with Bloomberg's latest progress and developments. I have the requisite knowledge and the trained ability to navigate and perform effective searches on the on the Bloomberg terminal.

2. I am a Certified Mortgage Securitization Auditor and my qualifications, expertise and experience provide me with the background necessary to certify the audit services and to be qualified as an expert in this field. I have produced hundreds of Securitized Analysis Reports in residential real estate mortgage investigation, have appeared in court as an expert witness, and have trained auditors in California, Nevada, and New York and via the Internet in webinar format.

3. I have the trained skills and qualifications to navigate and perform searches on the Bloomberg terminal in regards to the automated tracking and determination of mortgage and loan related documents and information.

4. The contents of this report are factual, but it is provided for information purposes only and is not to be construed as "legal advice."[1]

---

[1]The client has been strongly advised to seek legal consultation from a competent legal professional in connection with the contents of this report and how to properly use it.

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



5. April 15, 2013, I researched the Bloomberg online Database at the request of JOSE AND FLOR BARRIONUEVO whose property address is 5931 Annandale Way, Dublin, CA 94568.

6. Based on the information I was provided, JOSE AND FLOR BARRIONUEVO signed a Promissory Note in favor of Washington Mutual Bank, FA on February 28, 2006.

7. Loan level detail was not identified in any publically reporting trust. A trust meeting the qualifications for securitization is identified as the WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR4 TRUST with the Master Servicer being Washington Mutual Bank; the Sponsor / Seller being WASHINGTON MUTUAL BANK and the Depositor being WAMU ASSET ACCEPTANCE CORP.

8. The basis of the identification of Loan in WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR4 TRUST was made from the following factors/information that exactly correspond with JOSE AND FLOR BARRIONUEVO'S loan documents provided: Loan Number: 03-2099-070693877-6; Original Amount: $1,720,000.00; Origination Date: February 28, 2006; Location of Property: CA; Property Type: Planned Unit Development; Occupancy: Owner Occupied; Zip Code: 94568; Type Loan: 30 Year Adjustable Rate Mortgage with a 125% of principal negative amortization cap.

9. Generally, if the Deed of Trust and the Note are not together with the same entity, there can be no legal enforcement of the Note. The deed of trust enforces the Note and provides the capability for the lender to foreclose on the property. Thus, if the Deed of Trust and the Note are separated, foreclosure legally cannot occur. The Note cannot be enforced by the Deed of Trust if each contains a different mortgagee/beneficiary; and, if the Deed of trust is not itself a legally enforceable instrument, there can be no valid foreclosure on the homeowners' property.

10. No Entity can be a CREDITOR if they do not hold/own the asset in question (i.e. the NOTE and/or the property); a Mortgage Pass Through Trust (i.e. R.E.M.I.C., as defined in Title 26, Subtitle A, Chapter 1, Subchapter M, Part II §§ 850-862) cannot hold assets, for if they do, their tax exempt status is violated and the Trust itself is void ab initio. Therefore, either the Trust has either voided its intended Tax Free Status, or the asset is not in fact owned by it.

11. In the event that the loan was sold, pooled and turned into a security, the alleged holder can no longer claim that it is a real party of interest, as the original lender has been paid in full.

12. Further said, once the Note was converted into a stock, or stock equivalent, it is no longer a Note. If both the Note and the stock, or stock equivalent, exist at the same time, that is known as double dipping. Double dipping is a form of securities fraud.

13. Once a loan has been securitized, which the aforementioned loan may have been done many times, it forever loses its security component (i.e., the Deed of Trust), and the right to foreclose through the Deed of Trust is forever lost.

14. The Promissory Note has been converted into a stock as a permanent fixture. It is now a stock and governed as a stock under the rules and regulations of the SEC; hence, the requirement for the filings of the registration statements, pooling and servicing agreements, form 424B-5, et.al. There is no evidence on Record to indicate that the Deed of Trust was ever transferred concurrently with the purported legal transfer of the Note, such that the Deed of Trust and Note has been irrevocably

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

separated, thus making a nullity out of the purported security in a property, as claimed (Federal Rules of Evidence Rules 901 & 902).

15. Careful review and examination reveals that this may be a securitized loan. The Assignment of Mortgage pretended to be an A to D transaction when in fact the foreclosing party was hiding the A to B, B to C, and C to D facts of true sales, where A is the original lender, B the sponsor/seller, C the bankruptcy-remote depositor, and D, the issuing mortgage-backed securities trust. They also hid the legal SEC filings, governing the transaction according to our findings. But to be controlled by those SEC filings, the true original loan Note and Mortgage had to be provided by the Document Custodian certified to have been in possession of them by them on or about April 25, 2006. Because it was not, the claim of ownership by the Trust cannot be substantiated and the loan servicing rights not established at law by agreement. I supply this report as written testimony and am available for oral testimony.

By:

_____

Michael Carrigan

Certified Mortgage Securitization Auditor / Bloomberg Specialist

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

**STATE OF CALIFORNIA**      )
                         ) sv: **ACKNOWLEDGEMENT**

**COUNTY OF ORANGE**      )

On _4-18-_ , 2013 before me, _Domlare V. Mestas, Notary Public_
                                                 (Notary Public)

personally appeared **MICHAEL CARRIGAN,** who proved to me on the basis of satisfactory evidence to be the man whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument under the penalty of perjury.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

My commission Expires _9-10-2013_

> **DOMINIC V. MESTAS**
> Commission # 1863653
> Notary Public - California
> Orange County
> My Comm. Expires Sep 10, 2013

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

**EXHIBIT F**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

_____

                           )

JOSE BARRIONUEVO AND FLOR  )

BARRIONUEVO, individuals,   )     **CERTIFIED**

                        )     **TRANSCRIPT**

      Plaintiffs,       )

                        )

    vs.                )No. 3:12-CV-0572 EMC

                        )

CHASE BANK, N.A. Successor In)

Interest to WASHINGTON MUTUAL)

BANK, FA; et al.,        )

                        )

      Defendants.       )

_____)

_____


DEPOSITION OF MICHAEL CARRIGAN

Santa Monica, California

Tuesday, May 21, 2013

Volume I



Reported by:

LORI SCINTA, RPR

CSR No. 4811

Job No. 1671085


PAGES 1 - 39

Sarnoff, A VERITEXT COMPANY
877-955-3855

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

———————————————————————————  )
                                   )
JOSE BARRIONUEVO AND FLOR           )
BARRIONUEVO, individuals,           )
                                   )
        Plaintiffs,                 )
                                   )
    vs.                             )No. 3:12-CV-0572 EMC
                                   )
CHASE BANK, N.A. Successor In)
Interest to WASHINGTON MUTUAL)
BANK, FA; et al.,                   )
                                   )
        Defendants.                 )
———————————————————————————  )

————————————————————————————————————————————

        Deposition of MICHAEL CARRIGAN, Volume I, taken
on behalf of Defendants JP Morgan Chase, N.A. and
California Reconveyance Co., at 120 Broadway, Suite 300,
Santa Monica, California, beginning at 10:45 A.M. and
ending at 12:10 P.M. on Tuesday, May 21, 2013, before
LORI SCINTA, RPR, Certified Shorthand Reporter No. 4811.

```
 1    APPEARANCES:

 2

 3    For Plaintiffs:

 4         YESK LAW

 5         BY:  MICHAEL YESK

 6         Attorney at Law

 7         70 Doray Drive, Suite 16

 8         Pleasant Hill, California 94523

 9         925.849.5525

10         Email:  yesklaw@gmail.com

11

12    For Defendants JP Morgan Chase N.A. and

13    California Reconveyance Co.:

14         BRYAN CAVE LLP

15         BY:  JOHN C. HEDGER

16         Attorney at Law

17         560 Mission Street, 25th Floor

18         San Francisco, California 94105

19         415.675.3400

20         Email:  hedgerj@bryancave.com

21

22

23

24

25
```

Sarnoff, A VERITEXT COMPANY
877-955-3855

1                    INDEX

2

3    WITNESS                      EXAMINATION

4    MICHAEL CARRIGAN

5    VOLUME I

6

7         BY MR. HEDGER                        6

8

9                    EXHIBITS

10   NUMBER                              PAGE

11   Exhibit 1    Document entitled, "Certified    16

12                Forensic Loan Auditors, LLC

13                Property Securitization Analysis

14                Report," prepared by Arthur Bernardo,

15                Pages 4 through 19, filed 02/22/13

16

17   Exhibit 2    Document entitled, "Certified    17

18                Forensic Loan Auditors, LLC

19                Property Securitization Analysis

20                Report," prepared on April 15, 2013

21

22

23

24

25

                                         Page 4

```
 1    it makes the people you're dealing with not a real party
 2    in interest as they really have no economic stake.
 3         Q    And with regard to securitization of the
 4    mortgage loan associated with 5931 Annandale Way in
 5    Dublin, California, what was your conclusion?
 6         A    Well, I do not have hard evidence of
 7    securitization.  In such circumstances, I look to see
 8    what other types of securitization activity a lender was
 9    involved in at the time.  I look for trusts that were
10    formed shortly after loan execution to see the type of
11    work that they did and if that trust met the
12    qualifications for securitization of that loan.
13              I don't have the ability to audit loan-level
14    detail, which is recorded into Bloomberg or ABSNet, nor
15    does the SEC, to my knowledge, audit any mortgage pool
16    information.
17              MR. HEDGER:  Can you read that back, please.
18              (Record read as follows:
19                   "Well, I do not have hard evidence
20                   of securitization.  In such
21                   circumstances, I look to see what
22                   other types of securitization activity
23                   a lender was involved in at the time.
24                   I look for trusts that were formed
25                   shortly after loan execution to see
```

Page 19

```
 1              the type of work that they did and if

 2              that trust met the qualifications for

 3      ·       securitization of that loan.

 4              I don't have the ability to audit

 5              loan-level detail, which is recorded

 6              into Bloomberg or ABSNet, nor does the

 7              SEC, to my knowledge, audit any

 8              mortgage pool information.")

 9  BY MR. HEDGER:

10      Q    So let me see if I understand what you just

11  said and break it down.

12           You didn't find evidence of the mortgage for

13  this property being contained in any trust prospectus?

14      A    In any publicly reporting trust.

15      Q    Are there trusts that do not publicly report?

16      A    Yes, there are; and there are private placement

17  trusts, some of which can be noted on Bloomberg or

18  ABSNet, and some of which are not.

19           Those that are on Bloomberg will be shown as

20  stating, "collateral not available," in which case there

21  is no loan-level detail.  Often those are due to the

22  sponsor stating it is private, there are only so many

23  investors.  "We do not fall under Rule 144(a) of the

24  Securities Act of 1933.  We do not need to report such

25  detail."
```

Page 20

1    modifications.

2         Q    Do you see evidence of modifications?

3         A    Yes.  If you go to Page 15, you'll see the

4    number of -- reported number of loans modified.  Of

5    course, I have no way to audit that detail, either.  I

6    can just report what I see.

7              And you have two loans out of -- well, there's

8    468 left at that point, and the delinquency rate is

9    20 percent.

10             So, based on my experience, that seems kind of

11   low.

12        Q    But you did not find the loan for the

13   Barrionuevos' property in this trust; is that correct?

14        A    No, no, I did not find it.  That's correct.

15        Q    So you found the trusts that you felt

16   matched -- or that -- for which you felt the

17   Barrionuevos' mortgage terms matched the mortgages

18   within this trust.

19             What else did you do as part of creating this

20   report?

21        A    Well, I documented the characteristics of the

22   loan, the chain of title, and county records.

23             I noticed at that point there was a notice of

24   default, and I checked that this morning and saw that

25   that notice of default had been rescinded.

Page 27

```
 1           If it's an adjustable loan, I look up things
 2      like the index used, the lifetime floor, the lifetime
 3      cap, the margin.
 4           If it's a fixed loan, I'll look up -- look at
 5      the interest rate.  And if I have the note available,
 6      then I'll match that to the note.  Or other
 7      characteristics.  There are certain riders that are
 8      attached to a security instrument.  For instance, a
 9      planned-unit-development rider, one- to four-unit
10      property, vacation home rider; those kind of things.
11           Q    Okay.
12           A    So it's fairly obvious.
13           Q    So using the information you obtained about the
14      mortgage loan from the deed of trust terms, you were
15      unable to find a public trust which that mortgage loan
16      was part of?
17           A    Yes, that's correct.
18           Q    And so then after that you searched for trusts
19      that had mortgage loans with similar terms?
20           A    Yes.
21           Yes.  Now and then I've noted -- not with Chase
22      Bank, but I've noted where loans will state right --
23      well, somebody will state right on the assignment of
24      deed of trust or mortgage a loan was placed into a
25      certain trust.  I've looked it up, it's not there.
```

Sarnoff, A VERITEXT COMPANY
877-955-3855

1      Usually, though, they're pretty good about

2 putting in the name of the trust when the assignment of

3 deed of trust or mortgage is done.

4      So it seems to me that that's the number one

5 thing the banks want someone to think, is that they

6 actually own the loan.

7      And when some people figure out that the bank

8 is actually the servicer, then we'll say, "Okay.  We're

9 the servicer, but then we have to check with the

10 investor."

11      But then, you know, who's the investor, as

12 though there's one.  It turns out that maybe there's

13 many certificate holders of the trust.

14      Q    Okay.  And with regard to the Barrionuevo loan

15 in question, there was no indication of any investors

16 other than Washington Mutual and JP Morgan Chase?

17      A    The last known whereabouts for this loan are

18 Washington Mutual Bank.

19      Q    Is there any other entity besides JP Morgan

20 Chase, to your knowledge, that has asserted ownership of

21 the loan in question?

22      A    No.

23      I have seen assignments of FDIC loans with

24 loan-level detail recorded in county records, and I did

25 not note that in this particular case.  And that went

Page 32

1        I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby certify:

3        That the foregoing proceedings were taken

4  before me at the time and place herein set forth; that

5  any witnesses in the foregoing proceedings, prior to

6  testifying, were duly sworn; that a record of the

7  proceedings was made by me using machine shorthand which

8  was thereafter transcribed under my direction; that the

9  foregoing transcript is a true record of the testimony

10  given.

11        Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [ X ] was [ ] was not requested.

15        I further certify I am neither financially

16  interested in the action nor a relative or employee of

17  any attorney or party to this action.

18        IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20

21  Dated: May 21, 2013

22

23  _____

      LORI SCINTA, RPR

24     CSR No. 4811

25

Page 39