UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE BARRIONUEVO, *et al.*, | No. C-12-0572 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANTS'** **MOTION FOR SUMMARY JUDGMENT** |
| CHASE BANK, N.A., *et. al.*, | **(Docket No. 63)** |
| Defendants. | |
| _____/ | |

      Plaintiffs Jose and Flor Barrionuevo ("Plaintiffs") have sued JPMorgan Chase Bank, N.A. ("Chase"), as successor in interest to Washington Mutual Bank or Washington Mutual Bank, FA (collectively "WaMu") to prevent foreclosure of a certain piece of real property. The motion currently pending is Chase's motion for summary judgment on all four of Plaintiffs' claims: (1) Wrongful Foreclosure; (2) Slander of Title; (3) violations of Civil Code § 2923.5; and (4) violations of Calif. Bus. & Prof. Code § 17200 (Unfair Competition Law or "UCL").

### I.    FACTUAL & PROCEDURAL BACKGROUND

      The parties have submitted the following evidence in conjunction with the pending summary judgment motions. Where there are factual disputes, they are so noted.

      In February 2006, Plaintiffs borrowed $1,720,000 from WaMu (the "Loan") to purchase real property located at 59311 Annadale Way, Dublin, California (the "Property"). *See* Docket No. 63-1 (Ex. 1 to Waller Decl.) (Promissory Note, at p. 1). To that end, Plaintiffs executed a promissory note secured by a deed of trust, listing the California Reconveyance Company ("CRC") as the

trustee. *Id.*; Docket No 63-2 (Ex. 2 to Waller Decl.) (Deed of Trust, at p. 1). The deed of trust was recorded in March 2006. *Id.*

On April 25, 2006, the closing date, WaMu sponsored a securitization transaction that sold its mortgage loans and related assets to WaMu Asset Acceptance Corp. *See* Docket No. 69 (Ex. A, Part I to Dailey Decl.) (Pooling and Servicing Agreement, dated May 1, 2006, or "PSA," at pp. 1-2). At the same time, WaMu Asset Acceptance Corp., in turn, sold these assets to the "Washington Mutual Pass-Through Certificates WMALT Series 2006-AR4 Trust" (the "Trust"). *Id.* The parties dispute whether the Loan and Property were sold as part of this securitization transaction.

In 2008, WaMu failed. Consequently, the Office of Thrift Supervision closed WaMu, *see id.*, and Chase bought WaMu's banking operations with the assistance of the FDIC, who was named the receiver. Pursuant to the Purchase and Assumption Agreement, Chase purchased "substantially all of [WaMu's] assets, including "all right, title, and interest of the Receiver in and to all of the assets (real, personal and mixed, wherever located and however acquired)." *See* Docket No. 65-1 (Ex. B to Dft.'s RJN) (Purchase and Assumption Agreement, or "PAA," at ¶ 3.1 ["Assets Purchased By Assuming Bank"]). The parties also dispute whether the Loan and Property were included in this transaction.

In April 2009, the CRC, as trustee, issued and recorded a notice of default on the Loan. The notice of default indicates Plaintiffs were $46,016.52 in arrears. *See* Docket No. 65-2 (Ex. C to Dft.'s RJN) (Notice of Default). Three months later, the CRC executed and recorded a notice of trustee's sale, listing the estimated unpaid balance as $1,925,730.68. *Id.* (Ex. D to Dft.'s RJN) (First Notice of Trustee's Sale). Three months later, the CRC executed and recorded a second notice of trustee's sale, listing the estimated unpaid balance as $2,062,850.20. *Id.* (Ex. E to Dft.'s RJN) (Second Notice of Trustee's Sale). The CRC executed and recorded a final notice of trustee's sale in February 2012, listing the estimated unpaid balance as $2,243,973.95. *Id.* (Ex. F to Dft.'s RJN) (Final Notice of Trustee's Sale). Then, in April 2012, while the current action was pending, the CRC issued and recorded a rescission of the default notice and notices of trustee's sale. *Id.* (Ex. G to Dft.'s RJN) (Notice of Rescission).

## II. DISCUSSION

A. Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

In the current case, Chase has moved for summary judgment on all four of Plaintiffs' claims: Wrongful Foreclosure; (2) Slander of Title; (3) violations of Civil Code § 2923.5; and (4) violations of California's Unfair Competition Law. Because Plaintiffs have the ultimate burden of proof on each of these claims, Chase may prevail on its motion for summary judgment simply by pointing to Plaintiffs' failure "to make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

B. Wrongful Foreclosure

The crux of Plaintiffs' argument here is that Chase attempted to foreclose despite lacking the proper authority. Plaintiffs' wrongful foreclosure cause of action is styled after *Sacchi v. Mortg. Elec. Registration Sys., (MERS) Inc.*, No. CV 11-1658 AHM (CWx), 2011 WL 2533039 (C.D. Cal. June 24, 2011), and cases like it,[1] where no foreclosure sale has taken place and plaintiff has articulated a specific factual basis challenging the lender's authority to foreclose. Plaintiffs

---

[1] *Javaheri v. JPMorgan Chase Bank, N.A.*, CV10-08185 ODW FFMX, 2011 WL 2173786, at *5-6 (C.D. Cal. June 2, 2011) (*Javaheri*); *Ohlendorf v. Am. Home Mortg. Servicing*, 279 F.R.D. 575, 583 (E.D. Cal. 2010) (*Ohlendorf*); *Castillo v. Skoba*, No. 10cv1838 BTM, 2010 WL 3986953, at *2 (S.D. Cal. Oct. 8, 2010) (*Skoba*); *Tamburri v. Suntrust Mortgage, et. al.*, No. C-11-2899 EMC, 2011 WL 6294472, at *12-13 (N.D. Cal. Dec. 15, 2011) (*Tamburri*).

specifically contend that in 2006 WaMu securitized and sold its beneficial interest in the Property. *See* Docket No. 20 (FAC, ¶ 18). Thus, when Chase purported to purchase WaMu's assets in 2008, it could not have received a beneficial interest in the Property. Accordingly, Chase had no authority to foreclose. *Id.*

Despite plenary discovery, however, Plaintiffs have failed to produce competent evidence that Chase lacked the authority to foreclose. Plaintiffs cannot rely on allegations in their complaint to create a genuine issue. *Gasaway v. N.W. Mut. Life Ins. Co.*, 26 F.3d 957, 959-60 (9th Cir. 1994) (Nonmoving party must "go beyond the pleadings and show 'by her own affidavits, or by the depositions, answers to interrogatories, or admissions on file,' that a genuine issue of material fact exists." *Id.* at 885 (quoting *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553). "[A]n adverse party may not rest upon the mere allegations or denials of [her] pleadings." Fed. R. Civ. P. 56[e].)

Instead, Plaintiffs rely heavily on an audit report prepared by Michael Carrigan ("Carrigan Audit"), an initially disclosed but later withdrawn expert witness. However, the Carrigan Audit does not raise a genuine issue because it cannot be relied upon. *See Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1008 (9th Cir. 2007) ("[e]xpert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit"; finding expert opinion did not create a genuine issue of material fact because expert identified no facts supporting his opinion). Here, Carrigan's opinion – that the Loan was securitized and the Property sold to the Trust – is based on insufficient facts and amounts to speculation.

Mr. Carrigan conducted a search for the Property and Loan using public online databases administered by Bloomberg at the request of the Certified Forensic Loan Auditors, LLC on behalf of Plaintiffs. *See* Docket No. 63-1 (Ex. E to Hedger Decl.) (Carrigan Audit, at p. 12). After conducting this search, Mr. Carrigan prepared a "Property Securitization Analysis Report." *Id.* at pg. 1. The record does not indicate the nature of this report or how it was prepared. But similar services offered by the same entity, Certified Forensic Loan Auditors, LLC, describes the process as conducting a search on a Bloomberg terminal to determine whether a loan and the accompanying

4

real property securing that loan has been securitized into a public trust.[2]  Mr. Carrigan admits he could not locate the Loan or Property in a Bloomberg search.  He states:

> "The Loan Level Data search conducted using Bloomberg's terminal did not reveal matching characteristics based on the Loan number: **03-2099-070693877**; Original Amount: **$1,720,000.00**; Origination Date: **February 28, 2006**; Location of Property: **CA**; Property Type: **Planned Unit Development; Occupancy: Owner Occupied;** Zip Code**94568** [sic]**; Loan Type: 30 year Adjustable Rate Mortgage with 125% of principal negative amortization cap.**  However, examiner did locate a prospective REMIC TRUST within the Securities Exchange Commission (SEC) website that matches the characteristics for the *possibility* of securitizing this Loan.  Bloomberg snapshots of that Trust are provided below.  This trust is the **WAMU MORTGAGE PASS-THROUGH CERTIFICATE SERIES 2006-AR4 TRUST.**"

*See id*. (bold emphasis in original; italics emphasis added).  This quote only indicates Mr. Carrigan performed a search on the United States Securities and Exchange Commission (SEC) website and located a *possible* trust into which the Loan and Property *may have been* securitized.  Once Mr. Carrigan identified a *potential* trust, he was able to locate this trust using the Bloomberg database.  Significantly, however, Mr. Carrigan admits in deposition he was not able to locate the Loan and Property using "loan-level detail."  This deficiency is significant because Certified Forensic Loan Auditors, LLC advertises the fact that loan-level detail is how a real property loan is identified to have been securitized into a trust.[3]  Accordingly, Mr. Carrigan admitted in deposition that he "lacked hard evidence of securitization."  *See id*. (Ex. F to Hedger Decl.) (Carrigan Depo., at pp. 19-20).  His assertion that the loan in question was securitized in 2006 is thus speculative.  Plaintiffs fail to raise a genuine issue as to whether the loan was securitized.  This alone would warrant granting summary judgment in favor of Chase.

---

[2] *See* http://www.certifiedforensicloanauditors.com/product-samples.html (describing a similar report as "an audit [that] is among the first important steps in determining the securitization of a loan and by whom, and our staff are expert [sic] and very experienced in this research process.  A Bloomberg securitization audit from [Certified Forensic Loan Auditors, LLC ] can be a vital tool in an attorney's or homeowner's foreclosure defense and litigation brought against lenders." (last visited: August 9, 2013).

[3] *See* http://www.certifiedforensicloanauditors.com/product-samples.html ("The loan level data will identify that the loan is inside the securitized trust...") (last visited: August 9, 2013).

Even if the Court were to shift the burden to Defendant that the loan was not previously securitized, Chase would still be entitled to summary judgment. Ordinarily, plaintiffs bear the burden of proof in a wrongful foreclosure action. *See Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 270 (2011) (noting that where a party contends a bank lacks authority to conduct the foreclosure sale, that party bears the burden of showing impropriety of the sale). Arguably, however, because Plaintiffs' wrongful foreclosure cause of action is styled after *Sacchi* and similar cases, the burden shifts where (as here) plaintiff's action is based on a specific factual basis to challenge the lender's authority to foreclose:

> "[W]hen the borrower has a specific factual basis for challenging the standing of the foreclosing entity, the burden shifts to that entity to produce sufficient competent oral or written evidence to persuade the Court that it is more probable than not that the entity instigating the foreclosure was the holder of the note or an authorized agent of the holder at the time the foreclosure was commenced."

*In re Reinke*, No. BR 09-19609, 2011 WL 5079561, *12 (Bankr. W.D. Wash. Oct. 26, 2011) (following *Sacchi*). Moreover, this Court previously found in *Miller v. Carrington Mortg. Servs.*, No. 12-CV-2282 (EMC), 2013 WL 3357889, *3 (N.D. Cal. July 3, 2013), that *Fontenot* is inapposite "[where] no foreclosure sale has taken place" and concluding that ". . . arguably Defendants, as the parties 'asserting a right under an assigned instrument[,] bear[] the burden of demonstrating the assignment.'" As no foreclosure has occurred here, the burden of proof arguably lies with Defendant.

Chase has produced evidence to support an inference that the Property was not securitized before 2008, when Chase purportedly obtained a beneficial interest in the Property. It has provided sworn testimony that it possesses signed originals of the note and deed of trust to the Property. *See* Docket No. 75-1 (Supplemental Waller Decl., ¶ 5 and Ex. A thereto). Chase also produced electronic database records which indicates it had a beneficial interest in the Property at the time of foreclosure. These records consist of recent screen captures of Chase's business records found in a collateral loan file that are maintained electronically on Chase's computer systems. First, a screen capture from this electronic database indicates that the "ACQUISITION TYPE" of the Loan in questioin is "bank originated," and not merely a service agreement for a pooled loan. *See* Docket

6

No. 75-2 (Ex. B to Supplemental Waller Decl.). Second, another screen capture from the same internal electronic database lists Chase as the "investor" or owner of the Loan, and there is no record of any transfer of Chase's interest to another investor. *See id*. (Ex. C to Supplemental Waller Decl.). *See id*. (Exs. C and D to Supplemental Waller Decl., ¶¶ 10-11). These documents are corroborated by Carrigan's deposition testimony. *See* Docket No. 63-1 (Ex. F to Hedger Decl.) (Carrigan Depo., at p. 32) ("Q: Is there any other entity besides JP Morgan Chase, to your knowledge, that has asserted ownership of the loan in question? A: No."). Finally, Plaintiffs' loan number is not listed among the 646 loans originated by Washington Mutual which were securitized into the trust. *See id*. (Ex. E to Supplemental Waller Decl.).

Accordingly, Chase has produced sufficient evidence upon which a jury could reasonably conclude that the Loan was sold to the Trust in 2006; thus, Chase acquired ownership of the Loan and had sufficient authority to foreclose on the Property.

C.  Violation of Civil Code § 2932.5

Plaintiffs also contend that Chase violated Calif. Civ. Code § 2932.5 by not recording its assignment before exercising its authority to foreclose. But since this argument is tied to Plaintiffs' contention that Chase lacked the authority to foreclose, *see* Docket No. 20 (First Amended Complaint, "FAC," ¶ 21) ("[Chase] could not have acceded to the beneficial interest in Plaintiffs' Deed of Trust because WaMu sold it to the [Trust] in 2006"), this argument is subsumed within the foregoing analysis and consequently fails. Furthermore, *In Re Salazar*, 448 B.R. 814 (Bankr. S.D. Cal. 2011), the case upon which Plaintiffs base their argument that Chase violated Calif. Civ. Code § 2932.5, has been reversed and remanded. *See id*. at ¶ 20 (citing *In Re Salazar*, 448 B.R. 814 (Bankr. S.D. Cal. 2011), *reversed and remanded by In re Salazar*, 470 B.R. 557, 560 (S.D. Cal. 2012) (Calif. Civ. Code § 2932.5 does not apply to deeds of trust)). Accordingly, Plaintiffs' contentions that Chase violated § 2932.5 similarly fails to raise a genuine issue.

D.  Slander of Title

Plaintiffs' slander-of-title claim is based on Chase's alleged unprivileged and illegal attempts to foreclose on the Property. *See Alpha & Omega Dev., LP v. Whillock Contracting, Inc.*, 200 Cal. App. 4th 656, 661 (2011) (slander of title may be accomplished by words or acts clouding title).

The elements of a claim for slander of title are: (1) a publication, (2) which is without privilege or justification, (3) which is false, (4) which causes direct and pecuniary loss. *Id*. at 664; *Sumner Hill Homeowners' Ass'n, Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1030 (2012). Plaintiffs have failed to produce evidence establishing the second, third and fourth elements of this claim.

Plaintiffs contend the foreclosure documents are false because Chase lacked the authority to publish them and Chase falsely stated compliance with Calif. Civ. Code § 2923.5. However, Plaintiffs' allegation of a false publication is tied to its securitization argument. Because the Court grants summary judgment, finding there is no genuine issue of fact as to whether Chase had the title and the authority to foreclose, Plaintiffs have failed to establish a false publication.

Furthermore, the recordation of the foreclosure documents were privileged. The publication of nonjudicial foreclosure documents is protected by a qualified privileged. California Civil Code provides:

> "A privileged publication or broadcast is one made:
>
> (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested . . ."

Cal. Civ. Code § 47(c)(1) (Privileged publication or broadcast). More specifically, "All of the following shall constitute privileged communications pursuant to Section 47: . . . [p]erformance of the procedures set forth in this article." Cal. Civ. Code § 2924(d)(2). This includes the power of a ". . . trustee, mortgagee, or beneficiary, or any of their authorized agents [to] file for record, . . . , a notice of default." § 2924(a)(1). Thus, the filing of a notice of default is privileged, except when published with malice. *See Ogilvie v. Select Portfolio Servicing*, No. 12-CV-1654 (DMR), 2012 WL 4891583, at *5 (N.D. Cal. Oct. 12, 2012) (citing cases); *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1194 (C.D. Cal. 2011) (finding qualified privilege applies to nonjudicial foreclosure actions and thus these actions are privileged in the absence of malice, following *Kachlon*).

Plaintiffs fail to establish a genuine issue of fact as to malice. Malice requires "that the publication was motivated by hatred or ill will" or that defendants "lacked reasonable grounds for belief in truth of publication and therefore acted with reckless disregard for plaintiff's rights."

8

1 *Kachlon v. Markowitz*, 113 Cal. App. 4th 1363, 1370 (2008).  Plaintiffs offer no evidence of actual
2 malice.  Instead, Plaintiffs contend that Chase knew that the PAA conveyed no beneficiary interest
3 in the Property, and thus, acted in reckless disregard for the truth – that they lacked the authority to
4 foreclose.   See Docket No. 67 (Opp'n, at p. 11).  A reckless disregard exists where there is "a high
5 degree of awareness . . . [of] . . . probable falseness" of a statement or there are "serious doubts as to
6 [its] truth."  *See Cortinas v. Nevada Hous. Div.*, No. 11-CV-1480 (KJD), 2013 WL 1182217, at *7
7 (D. Nev. Mar. 18, 2013) (citing Restatement (Second) of Torts § 580A cmt. d (1977).

8       Again, Plaintiffs have produced no evidence to show that the PAA, the 2008 agreement
9 between Chase and WaMu, did not convey the Loan and Property to Chase.  By contrast, Chase has
10 offered evidence the Loan and Property had been so conveyed.  *See* Docket No. 63-2 (Waller Decl.,
11 ¶ 8); Docket No. 75-1 (Suppl. Waller Decl., ¶ 10) ("The 'investor' is the entity that currently owns
12 the loan. The investor name highlighted is [Chase]."); Docket No. 75-2 (Ex. C to Suppl. Waller
13 Decl.).  Second, Plaintiffs' contention that Chase acted with a reckless disregard for the truth is
14 contradicted by Waller's sworn affidavit indicating Chase possesses the original promissory note
15 and deed of trust securing the Property.  *See* Docket No. 63-2 (Waller Decl., ¶ 7);  Docket No. 75-1
16 (Suppl. Waller Decl., ¶ 5) (copies of the original note and deed of trust produced as Ex. A to the
17 Suppl. Waller Decl.).  Because Plaintiffs have failed to meet their burden that Chase acted with a
18 reckless disregard for the truth, recordation of the foreclosure documents is presumed privileged.

19 E.    <u>Civil Code § 2923.5</u>

20       Chase is entitled to summary judgment on this claim because Plaintiffs have failed to
21 produce evidence that Chase did not contact them and Plaintiffs' § 2923.5 claim is now moot.
22 Section 2923.5 is commonly referred to as California's Notice of Default statute, which requires the
23 foreclosing party to contact the borrower to "explore options . . . to avoid foreclosure":

> (a)(1)  A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until both of the following:
>
> (A)  Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e) . . .

9

> (2) A mortgage servicer shall contact the borrower in person or *by telephone* in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

Cal. Civ. Code § 2923.5 (emphasis added). Plaintiffs contend Chase failed to exercise due diligence because they were never contacted prior to the filing of the notice of default. *See* Docket No. 20 (FAC, ¶ 29).

Plaintiffs only allege and have produced no admissible evidence they were "never contacted." *See* Docket No. 20 (FAC, ¶ 28). When asked to admit during discovery that Chase complied with § 2923.5(a)(1), Plaintiffs denied the request for admission but provided no factual basis for their denial. Deficient discovery responses can support entry of summary judgment. *Conlon v. U.S.*, 474 F.3d 616, 620 (9th Cir. 2007) (upholding entry of summary judgment based on untimely responses that failed to provide factual basis for denials). Plaintiffs do not offer, for example, an affidavit setting forth facts tending to show Chase failed to contact them, despite being aware of their burden to do so:

> "Here, Plaintiffs allege that the Declaration is false because Plaintiffs were in fact never contacted. ***Plaintiffs have the right to try and prove that the declaration is false***, and '[t]hat is not the same as whether the language of the declaration fails to comply with the statute.' [internal citations omitted] That is, Plaintiffs are not arguing that language of the Declaration does not satisfy the requirements of Section 2923.5, but rather they are challenging the truth of the statements contained in the Declaration."

*See* Docket no. 25 (Opp'n to Dft.'s Motion to Dismiss, at pp. 6-7) (emphasis added). Plaintiffs, however, have failed to produce evidence challenging the veracity of the declaration affirming Chase's compliance with § 2923.5.

In any event, Plaintiffs' § 2923.5 claim is now moot. Chase correctly notes that "the only remedy provided is a postponement of the sale before it happens." *See Mabry*, 185 Cal. App. 4th at 214 ("[T]he remedy for noncompliance is a simple postponement of the foreclosure sale, nothing more."); *Skov v. U.S. Bank Nat. Assn.*, 207 Cal. App. 4th 690, 698 (2012) (same). Since Chase has rescinded all foreclosure documents at issue in this action, including the notice of trustee's sale, the only available remedy is now rendered meaningless because there is no longer a pending sale to postpone.

F.  Unfair Competition Law

Where a court grants summary judgment on predicate claims, the related UCL claims must also fail. *See Breakdown Services, Ltd. v. Now Casting, Inc.*, 550 F. Supp. 2d 1123, 1142 (C.D. Cal. 2007) ("Accordingly, in a case where plaintiff's § 17200 claim is predicated on antitrust violations that fail to withstand summary judgment, the § 17200 claim must also fail."); *Nool v. HomeQ Servicing,* 653 F. Supp. 2d 1047, 1056 (E.D. Cal. 2009) (dismissing UCL claims with leave to amend because underlying causes of action failed to state a claim); *Williams v. Wells Fargo Bank*, NA, No. 13-CV-0303 (DOC), 2013 WL 2047000, at *4 (C.D. Cal. May 13, 2013) (dismissing plaintiff's UCL claim because claim under Calif. Civ. Code § 2923.5 failed on federal preemption grounds; noting liability under § 17200 depends on existence of underlying violation of another law). Accordingly, Chase is also granted summary judgment on Plaintiffs' UCL claims consistent with this Order regarding Plaintiffs' related predicate claims.

### III.  CONCLUSION

For the foregoing reasons, the Court grants Chase's motion for summary judgment on all four of Plaintiffs' causes of action: (1) Wrongful Foreclosure; (2) Slander of Title; (3) violations of Civil Code § 2923.5; and (4) violations of Calif. Bus. & Prof. Code § 17200.

This order disposes of Docket No. 63. The Clerk of Court shall enter judgment for Defendants and close the case.

IT IS SO ORDERED.

Dated: August 12, 2013

_____
EDWARD M. CHEN
United States District Judge

11